[No. B033645. Second Dist., Div. Four. Sept. 26, 1989.]

BRUCE SMITH et al., Plaintiffs and Appellants, v.
COUNTY OF LOS ANGELES, Defendant and Appellant.

BRUCE SMITH et al., Plaintiffs and Respondents, v.
LOS ANGELES COUNTY WATERWORKS DISTRICT NO. 29,
Defendant and Appellant.

COUNSEL

Fadem, Berger & Norton, Ann Kelly, Michael M. Berger and Richard D. Norton for Plaintiffs and Appellants and Plaintiffs and Respondents.

De Witt W. Clinton, County Counsel, John F. Krattli, Deputy County Counsel, Nossaman, Guthner, Knox & Elliott and James C. Powers for Defendant and Appellant.

OPINION

**GEORGE, J.**—The owners of three homes destroyed by a landslide, plaintiffs Bruce Smith, Marvin Forrest, and Henry and Janet Del Giudice (here-

inafter Homeowners), obtained a judgment against defendant County of Los Angeles (County) in an amount in excess of $3 million on causes of action for inverse condemnation, dangerous condition of public property, and nuisance. Judgment was entered in favor of codefendant Los Angeles County Waterworks District No. 29 (Waterworks).

County appeals from the judgment, contending (1) Homeowners' tort claims for dangerous condition of public property and nuisance were not timely filed pursuant to the California Tort Claims Act, (2) the trial court erred in instructing the jury regarding theories of liability not included in Homeowners' tort claims, (3) the trial court erred in prohibiting County from calling two County geologists as witnesses because County had not designated them as expert witnesses prior to trial, (4) the trial court erred in refusing to exclude evidence of County workers' recommendations for remedial measures, (5) because removal of slide debris from the roadway was an exercise of police power and reasonable as a matter of law, any resulting damage was noncompensable, (6) County was not liable for damages for emotional distress because there was no preexisting relationship between the parties and no intentional tort was committed, (7) the portion of the judgment awarding damages for emotional distress is not supported by substantial evidence, (8) the trial court erred in declining to submit to the jury the special verdict form proposed by County, and (9) the trial court erred in awarding interest on the judgment from June 15, 1981.

Homeowners cross-appeal, contending the trial court erred in (1) reducing the damages awarded to plaintiff Forrest by $110,000 because Security Pacific Bank reconveyed its trust deed on Forrest's property, and (2) determining the rate of prejudgment interest. Waterworks appeals from a postjudgment order denying Waterworks its costs.[1] For the reasons that follow, we affirm the judgment in all respects with the exception of the order denying Waterworks its costs, which we reverse, remanding the matter for a determination of the amount of such costs.

## FACTUAL AND PROCEDURAL SUMMARY

On August 30, 1982, Homeowners filed tort claims against County alleging property damage and emotional distress. Each claim alleged that County had "cut into the hill" to create Rambla Pacifico Road, and that this "cut removed support" for those residences and "created a landslide danger." Homeowners stated their houses had been, or would have to be, demolished and Homeowners had suffered emotional distress.

---

[1] Such an order is appealable. (Code Civ. Proc., § 904.1, subd. (b); *Brown v. Nolan* (1979) 98 Cal.App.3d 445, 448, fn. 2 [159 Cal.Rptr. 469].)

On April 22, 1983, Homeowners filed a complaint against County (Super. Ct. L.A. County, No. WEC 79919), which included causes of action for inverse condemnation and nuisance.[2] In an amended complaint filed October 14, 1983, Homeowners alleged the following. There are three County roads, including Rambla Pacifico, on the hillside where Homeowners' residences are located. The hillside was the site of an ancient landslide (approximately 15,000 years ago) but had been stable in recent times. In the 1930's, County cut into the hillside to build the three roads and thereby "destabilized the old landslide by removing lateral and subjacent support . . . ." Rains deposited slide debris on the roadways, adding stability to the hillside by providing lateral support, but County removed the slide debris without providing "replacement stabilization," thus reactivating the landslide. Homeowners further alleged County issued permits for construction of additional homes and "seepage pits," which contributed to the landslide by introducing additional water into the hillside.

On August 13, 1985, Homeowners filed a complaint against Waterworks (Super. Ct. L.A. County, No. WEC 96856) alleging a cause of action for inverse condemnation, claiming the water supply system for homes in the area was negligently designed and maintained and, consequently, frequently discharged water into the hillside, thereby contributing to the landslide.[3] On November 6, 1986, the two actions were consolidated.

The parties agreed the jury would decide the causes of action for dangerous condition of public property and nuisance, and whether damages for emotional distress resulted. The jury also was charged with rendering an advisory verdict regarding the cause of action for inverse condemnation, with that matter to be decided by the court.

At trial, Homeowners introduced the expert testimony of geologist Douglas Moran, who testified two large ancient landslides had occurred on the western slope of Las Flores Canyon approximately fifteen thousand years ago. Thereafter a substantial amount of soil accumulated in the bottom of Las Flores Canyon, buttressing the hillside and stabilizing the slope.

---

[2] Twenty-six additional defendants also named in the complaint eventually were dismissed from the suit and are not involved in the present appeal.

As to County, the complaint alleges causes of action for inverse condemnation and nuisance. The cause of action for inverse condemnation, however, includes several "counts," including dangerous condition of public property. The parties, both in the trial court and on appeal, state that Homeowners alleged three causes of action against County: inverse condemnation, dangerous condition of public property, and nuisance. We need not resolve this apparent discrepancy because it does not affect the outcome of any issue we need address in this appeal.

[3] The County of Los Angeles Flood Control District also was named as a defendant but no longer is a party to this action.

In 1978, a landslide above Rambla Pacifico destroyed a home owned by Truesdell Brown near the property owned by plaintiff Forrest. Moran testified this slide, referred to as the "Rambla Oriente Landslide," was caused by construction of Rambla Pacifico Road and was triggered by heavy rainfall. Moran's testimony made reference to several reports, later admitted into evidence, prepared by County employees. These reports, most of which were either written by or reviewed by County geologists Arthur Keene and James Shuttleworth, identified construction of Rambla Pacifico Road and removal of slide debris from that road as possible contributing factors to the Rambla Oriente landslide and noted that "[h]eadward enlargement of the landslide [ ] should be anticipated."

In 1979, there appeared the first indications that the larger Rambla Pacifico landslide was occurring. Over the next several years, the damage caused by this landslide continued to increase in severity. A report prepared by County in November 1980 stated it was "difficult to determine" whether construction of Rambla Pacifico Road was a contributing cause of the landslide and recommended further tests. An addendum to this report recommended sealing cracks in the pavement of Rambla Pacifico Road because "[w]ater entering these cracks will decrease the stability of the landslide." Rambla Pacifico Road was closed in 1984, and by June 1985 the landslide encompassed 18 acres in size and caused 8 houses, including those owned by Homeowners, to be destroyed.

County geologist Shuttleworth was called by Homeowners as an adverse witness. (Evid. Code, § 776.) When Shuttleworth was examined concerning the effect of a road cut at the "toe" or bottom portion of a landslide, County's attorney requested a conference outside the hearing of the jury at which he noted Shuttleworth had not been called as an expert witness and that if Homeowners elicited his opinions, County would be entitled to do the same on cross-examination. When the trial court agreed that Homeowners' last question would "open the door to [Shuttleworth's] expert opinion," Homeowners withdrew the question.

County called as an expert witness geologist Gary Rasmussen, who testified the Rambla Pacifico landslide was one of a series of landslides which had occurred on the hillside subsequent to the ancient landslide and was triggered not by the construction of Rambla Pacifico Road but by unusually heavy rainfall coupled with sewage effluent. Rasmussen further stated that expansion of the Rambla Oriente landslide, which destroyed the Brown home, did not cause the Rambla Pacifico landslide, which destroyed Homeowners' residences. Instead the Rambla Oriente landslide was a part of, and thus was caused by, the larger Rambla Pacifico landslide.

The jury found County liable on the theories of dangerous condition of public property and nuisance and awarded Homeowners damages for emotional distress in the aggregate amount of $112,000. In the advisory portion of its verdict involving the cause of action for inverse condemnation, the jury found County liable but Waterworks not liable. After further argument to the trial court, the court agreed with the jury's advisory verdict on the inverse condemnation cause of action, finding Waterworks not liable and awarding damages against County for inverse condemnation in an aggregate amount of $1,283,000, plus interest from June 15, 1981, as well as costs and attorney's fees. The total amount of the judgment against County was nearly $3.3 million. County appealed from the judgment; Homeowners filed a cross-appeal, and Waterworks appealed from a postjudgment order denying it costs.

## DISCUSSION

### COUNTY'S APPEAL

### I

*Homeowners' Tort Claims, Alleging Nuisance and Dangerous Condition of Public Property, Were Timely Filed and Provided County With Sufficient Notice of the Theories of Liability Relied Upon at Trial by Homeowners*

In the trial court, County argued that the tort claims filed by Homeowners, pursuant to Government Code section 945.4,[4] did not sufficiently allege nuisance and dangerous condition of public property in that they alleged only that construction of Rambla Pacifico Road caused the landslide which destroyed Homeowners' residences. County thus asserted that Homeowners were barred from contending at trial that clearance of slide debris from the roadway and water runoff over the roadway contributed to the landslide.

After extensive argument, the trial court ruled the claims were "sufficient to put the county on fair notice that the nature of the road, its maintenance and its construction are all covered by the claim."

---

[4] Government Code section 945.4 states: "[N]o suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented . . . until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected . . . ."

At the time the present claim was filed, Government Code section 910 provided: "A claim . . . shall show: [¶] . . . (c) The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted; [¶](d) A general description of the . . . injury, damage or loss incurred so far as it may be known at the time of presentation of the claim . . . ."

In order to be sufficient, a tort claim against a public entity must describe the "circumstances of the occurrence or transaction which gave rise to the claim asserted." (Gov. Code, § 910, subd. (c).) ■ "Although a claim need not conform to pleading standards, the facts constituting the causes of action pleaded in the complaint must substantially correspond with the circumstances described in the claims as the basis of the plaintiff's injury. [Citation.] Where there has been an attempt to comply but the compliance is defective, the test of substantial compliance controls. Under this test, the court must ask whether sufficient information is disclosed on the face of the filed claim 'to reasonably enable the public entity to make an adequate investigation of the merits of the claim and to settle it without the expense of a lawsuit.' [Citation.]" (*Loehr* v. *Ventura County Community College Dist.* (1983) 147 Cal.App.3d 1071, 1082-1083 [195 Cal.Rptr. 576].)

Several cases have barred a cause of action because it was based on an entirely different factual theory from that alleged in the claim. In *Connelly* v. *State of California* (1970) 3 Cal.App.3d 744 [84 Cal.Rptr. 257], the plaintiff, relying on information from a state agency, prepared his boat docks to withstand an expected rise in the level of the Sacramento River. The plaintiff's docks were damaged when the river rose past its anticipated level, and the plaintiff filed a claim alleging the state negligently had disseminated inaccurate river forecasts. In his subsequent complaint, however, the plaintiff also alleged that water negligently was released from state-operated dams. The Court of Appeal ruled this latter allegation was barred because the plaintiff's claim had not made reference to negligence in the operation of the dams. (*Id.,* at p. 753.)

The plaintiffs in *Lopez* v. *Southern Cal. Permanente Medical Group* (1981) 115 Cal.App.3d 673 [171 Cal.Rptr. 527] were struck by an automobile whose driver allegedly had suffered an epileptic seizure. The plaintiffs filed a claim alleging the state was aware the other driver was an epileptic but had failed to revoke his driver's license. After plaintiffs filed suit, they discovered that prior to the collision the state had no knowledge of the other driver's epilepsy. Plaintiffs attempted to amend their complaint to allege that the state, prior to the accident, was aware of the other driver's failure to comply with accident-reporting and financial responsibility provisions of the Vehicle Code but had failed to suspend or revoke his driver's license. The Court of Appeal ruled the plaintiffs were prohibited from alleging "a cause of action not mentioned in that claim." (*Id.,* at p. 677.)

In *Nelson* v. *State of California* (1982) 139 Cal.App.3d 72 [188 Cal.Rptr. 479], the plaintiff, a prison inmate, filed a claim based on alleged medical malpractice. In an amended complaint, the plaintiff attempted to allege a cause of action based on the defendant's failure to summon immediate and

competent medical care. In holding the plaintiff could not pursue this cause of action, the Court of Appeal stated: "If a plaintiff relies on more than one theory of recovery against the State, each cause of action must have been reflected in a timely claim. In addition, the factual circumstances set forth in the written claim must correspond with the facts alleged in the complaint; even if the claim were timely, the complaint is vulnerable to a demurrer if it alleges a factual basis for recovery which is not fairly reflected in the written claim. [Citations.]" (*Id.,* at p. 79.)

In *Donohue* v. *State of California* (1986) 178 Cal.App.3d 795 [224 Cal.Rptr. 57], the plaintiff's automobile was struck by a vehicle driven by a minor taking his examination for a driver's license. The plaintiff filed a claim stating that employees of the Department of Motor Vehicles were negligent in permitting an uninsured motorist to drive upon a public street. The plaintiff's complaint, however, alleged the defendants negligently instructed, directed, and controlled the minor during the examination and failed to supervise him properly when he took the examination. The Court of Appeal ruled this cause of action could not be maintained, because "the factual basis for recovery alleged in the complaint is not reflected in plaintiff's claim . . . ." (*Id.,* at p. 804.) The doctrine of substantial compliance did not cure this defect because the complaint was "based on an entirely different state of facts" from the earlier claim. (*Ibid.*)

Most recently, in *Fall River Joint Unified School Dist.* v. *Superior Court* (1988) 206 Cal.App.3d 431, 434 [253 Cal.Rptr. 587], the plaintiff's claim stated he was entering a school building " 'when the door closed with sufficient force to slam [plaintiff's] head against the steel door frame. At the time of the accident, the door was in a dangerous and defective condition for several reasons, including, but not limited to the fact, the door closed with excessive force.' " The claim was rejected, and plaintiff filed suit. In an amended complaint, plaintiff sought to add a cause of action based on the theory that school personnel "negligently failed to supervise students who were engaged in 'dangerous horse-play,' and that in the course of this play plaintiff fell in such a way that his head was caught between the door and the door-jam." (*Ibid.*) The Court of Appeal held this cause of action was barred because it would "premise liability on an entirely different factual basis than what was set forth in the tort claim." (*Id.,* at p. 435.) Plaintiff's reliance on the doctrine of "substantial compliance" was found "unavailing" because the proposed cause of action was "based upon a set of facts entirely different from those first noticed." (*Ibid.*) The court observed that "defendant was given no warning that it might be sued for its employee's failure to supervise plaintiff and his fellow students." (206 Cal.App.3d at p. 436.)

In contrast to the foregoing cases in which plaintiffs were barred from asserting at trial theories of liability based on factual allegations entirely different from those set forth in the claims, other cases have allowed plaintiffs to proceed on causes of action based on facts omitted from the claim, where those omitted facts are sufficiently related to those alleged in the claim. *Parodi* v. *City & County of San Francisco* (1958) 160 Cal.App.2d 577 [325 P.2d 224] arose from a claim which alleged the plaintiff was injured while a passenger on a trolley coach near a designated intersection. At trial, the plaintiff was permitted to amend her complaint to conform to her trial testimony that the accident actually occurred 11 blocks from the intersection designated in her claim. The resulting judgment was affirmed on the basis the plaintiff had complied substantially with the claims statute because the information given, although inaccurate, was sufficient to allow the state to investigate the claim. (*Id.*, at pp. 581-582.)

In *White* v. *Moreno Valley Unified School Dist.* (1986) 181 Cal.App.3d 1024 [226 Cal.Rptr. 742], a high school student was seriously injured in an automobile accident while en route to a school event. The claim against the school district described the injuries suffered as "[p]ersonal injuries" to the plaintiff and "[m]edical expenses incurred" by the plaintiff's mother and guardian ad litem. At trial of the suit subsequently brought by the plaintiff, the trial court excluded evidence of the plaintiff's medical expenses because the claim had not asserted that the plaintiff, rather than her mother, personally had incurred such expenses. The Court of Appeal reversed on the ground "the claim filed on behalf of plaintiff and her mother, while perhaps ambiguous, was sufficient to cover plaintiff's claim for recovery of medical expenses . . . ." (*Id.*, at pp. 1029-1030.) Observing that "[s]ubstantial medical expenses would, of course, naturally and certainly result from serious personal injuries" (*id.*, at p. 1031), the reviewing court concluded "plaintiff's claim was adequate to reasonably enable School District to make an adequate investigation and to settle the claim, including the medical expenses which were clearly encompassed within the overall claim." (*Id.*, at p. 1032.)

The present case presents a question closer than that involved in any of the preceding cases, but the facts before us bear more similarity to the circumstances in *Parodi* and *White* than to those in *Connelly* and its progeny. The claims in the present case alleged that County had "cut into the hill" to create Rambla Pacifico Road, and that this "cut removed support" for those residences and "created a landslide danger." County is correct that these claims do not expressly encompass the additional facts asserted by Homeowners at trial regarding removal of slide debris from the roadway and water runoff over the roadway but, unlike the circumstances in *Connelly* and its progeny, these are not allegations "based upon a set of

facts entirely different from those first noticed." (*Fall River Joint Unified School Dist.* v. *Superior Court, supra,* 206 Cal.App.3d 431, 435; see also *Donohue* v. *State of California, supra,* 178 Cal.App.3d 795, 804, and *Shelton* v. *Superior Court* (1976) 56 Cal.App.3d 66, 82-83 [128 Cal.Rptr. 454].)

The issue before us is whether the factual basis for Homeowners' cause of action was "fairly reflected in the claim . . . ." (*State of California* ex rel. *Dept. of Transportation* v. *Superior Court* (1984) 159 Cal.App.3d 331, 337 [205 Cal.Rptr. 518]; *Nelson* v. *State of California, supra,* 139 Cal.App.3d 72, 79.) ■ In making this determination, we are mindful that "[s]o long as the policies of the claims statutes are effectuated, they should be given a liberal construction to permit full adjudication on the merits. [Citation.]" (*Minsky* v. *City of Los Angeles* (1974) 11 Cal.3d 113, 123 [113 Cal.Rptr. 102, 520 P.2d 726].)

■ Homeowners' claims alleged that the construction of Rambla Pacifico Road caused the landslide which destroyed their homes. We agree with the trial court that Homeowners' assertions at trial regarding the clearing of slide debris from the roadway and the presence of water runoff over the roadway are fairly reflected in these claims. Necessary maintenance of the roadway, such as the clearing of slide debris, and conditions resulting from the presence of the road, such as the channeling of water runoff, are matters closely connected with construction of the road. We agree with the trial court that the claims were "sufficient to put the county on fair notice that the nature of the road, its maintenance and its construction are all covered by the claim[s]." Accordingly, Homeowners were not barred from raising these theories of liability at trial.

■ County also contends, for the first time on appeal, that Homeowners' tort claims alleging nuisance and dangerous condition of public property were not timely filed. For the following reasons, we conclude County's failure to raise this issue in the trial court prevents its raising the issue on appeal.

County maintains the issue whether Homeowners' claims were timely filed may be raised for the first time on appeal because that issue is a question of law involving the allegedly undisputed facts that the cause of action arose in June 1981 and the claims were filed over one year later in August 1982. County states that "[t]he date on which plaintiffs' causes of action arose was stipulated to . . . ." The portion of the reporter's transcript cited in support of this assertion, however, does not reflect a stipulation. Instead, the record contains the following statement by counsel for County: "We have accepted the June, '81 date only as the date when some visible cracks appeared. We do not agree that that is the date on which the

home became unuseable." When the trial court thereafter inquired whether County agreed "that as of that date, the owner's use and enjoyment of the property was substantially interfered with," County responded, "No."

At the time the claims here at issue were filed, Government Code section 911.2 provided: "A claim relating to a cause of action for death or for injury to person or to personal property or growing crops shall be presented . . . not later than the 100th day after the accrual of the cause of action. A claim relating to any other cause of action shall be presented . . . not later than one year after the accrual of the cause of action." A claim alleging nuisance and dangerous condition of public property, therefore, must be filed within one year after accrual of the cause of action.[5]

Government Code section 901 states: "For the purpose of computing the time limits prescribed by Section [ ] 911.2, . . . the date of the accrual of a cause of action to which a claim relates is the date upon which the cause of action would be deemed to have accrued within the meaning of the statute of limitations . . . ." The court in *Oakes* v. *McCarthy Co.* (1968) 267 Cal.App.2d 231, 254-255 [73 Cal.Rptr. 127], held in a case "involving damage to real property caused by removal of lateral support," that the determination when the statute of limitations began to run was a question of fact: "[o]nly when the consequential damage is sufficiently appreciable to a reasonable man may we hold an owner to a duty of expeditiously pursuing his remedies. As to when the consequential damage reached this point was a question of fact. [Citations.]"

The issue when damage to Homeowners' residences became sufficiently appreciable for their causes of action for nuisance and dangerous condition of public property to accrue may not be determined as a matter of law from the record before us. Accordingly, County may not, for the first time on appeal, raise the issue that Homeowners' tort claims were not timely filed.

County relies on the decision in *Taylor* v. *Mitzel* (1978) 82 Cal.App.3d 665, 671 [147 Cal.Rptr. 323]. In that case, the issue of the plaintiff's compliance with the claims statute was raised in the trial court by one of the defendants. The Court of Appeal held this was sufficient to preserve the issue as to other defendants who had failed to raise the issue in the trial court. The appellate court further relied on the fact that "compliance with the 100-day requirement must be alleged, and this complaint shows noncompliance on its face." (*Ibid.*) Neither of these circumstances is

---

[5] County's contention that Homeowners' claim alleging emotional distress had to be presented within 100 days is incorrect. The emotional distress claim alleged damages which arose from the existence of a nuisance, and thus they related to a cause of action for injury to property.

applicable in the present case, and the decision in *Taylor* is therefore distinguishable.

## II

*Any Error by the Trial Court in Limiting the Testimony of County Geologists Keene and Shuttleworth, Because County Did Not Designate Them as Experts Prior to Trial, Would Not Require Reversal of the Judgment*

From opening statement through closing argument, Homeowners relied heavily on reports written by County geologists concerning landslides above Rambla Pacifico Road. Many of these reports either were written or approved by County geologist Arthur Keene, and two reports were written by County geologist James Shuttleworth. These reports were useful to Homeowners because they contained opinions that the Rambla Oriente landslide could be expected to expand "headward" (i.e., upward) and that clearing slide debris from County roads might contribute to such expansion.

During the defense case, County announced its intention to call Keene and Shuttleworth as witnesses despite their not having been included in County's list of designated expert witnesses.[6] The trial court was willing to allow Keene and Shuttleworth to explain the opinions contained in their reports but unwilling to allow them to proffer their current expert opinions concerning the landslides. County wished to ask Keene and Shuttleworth whether the headward expansion predicted in their reports in fact occurred and, if not, how they could determine it had not; whether the remedial measures recommended in their reports would have prevented the loss of Homeowners' residences; and whether the landslide referred to in Shuttleworth's report was the same landslide that destroyed Homeowners' residences. The trial court denied County's request to ask the witnesses these questions, ruling "that Keene and Shuttelworth [*sic*] are fully examinable on their opinions that they rendered, and . . . can testify at length as to what it is they meant and what it is they knew at the time they rendered

---

[6] Former Code of Civil Procedure section 2037.5 provided that "no party required to serve a list of expert witnesses on the objecting party may call an expert witness to testify, except for purposes of impeachment, unless the requirements of Section 2037.3 for that witness have been met." The parties agree this provision governs, rather than Code of Civil Procedure section 2034 which was part of the Civil Discovery Act of 1986. An uncodified section of that act (Stats. 1987, ch. 86, § 20) provides: "The Civil Discovery Act of 1986 shall become operative on July 1, 1987. . . . It shall also govern discovery proceedings in actions then pending, except that (a) any particular use of a discovery method that was initiated before July 1, 1987, shall continue to be governed by the provisions of law regulating that method at the time it was initiated . . . ."

their opinions" but they would not be permitted to render "new expert opinions."

■ We need not determine whether the trial court erred in so limiting the testimony of County geologists Keene and Shuttleworth, because any such error would not require reversal of the judgment. In so holding, we do not underestimate the extent of Homeowners' reliance on reports written by County geologists. Certainly, if these reports erroneously had been admitted into evidence, such error would be prejudicial. This is not the issue which confronts us, however, because County does not contend the reports were improperly admitted into evidence. County was given the opportunity to have Keene and Shuttleworth explain these reports and even to impeach them, if they wished, by showing they were based on erroneous facts or false logic. County also had ample opportunity to have its designated expert explain that the predictions contained in those reports did not occur.

The sole restriction placed on County was that it was not permitted to have Keene and Shuttleworth testify their opinions had now changed based on evidence not available when their reports were prepared. Although having the persons responsible for some of County's reports publicly declare that their predictions had been proven inaccurate might have had some impact on the trier of fact, such testimony would have been open to attack as a biased reappraisal formulated in light of the impending liability faced by County. County has not asserted that Keene and Shuttleworth were prepared to say their opinions were erroneous in the context of the data available when their reports were prepared. In light of this circumstance, it is likely the jury would have placed far greater weight on the opinion expressed by these County experts prior to litigation than on their subsequent reappraisal of their opinions once County was faced with millions of dollars of potential liability.

Testimony that the current opinions of Keene and Shuttleworth differed from those expressed in their earlier reports would not have been insignificant, but it is not reasonably probable that a result more favorable to County would have occurred had County been allowed to ask Shuttleworth the few questions proposed in County's offer of proof. County's designated expert already had testified to the same matters. It is improbable the circumstance that the authors of the earlier County reports subsequently altered their opinions and now agreed with County's current expert would have affected the outcome of this case. (Cal. Const., art. VI, § 13.)

III

*The Trial Court Did Not Err in Admitting Evidence of Recommendations for Remedial Measures Contained in Reports Written by County Employees*

■ County contends the trial court erred in admitting evidence of recommendations for remedial measures found in various reports written by County employees. It is urged that this evidence was inadmissible on three grounds: (1) its admission violated Evidence Code section 1151, which requires exclusion of evidence of subsequent remedial conduct, (2) it was irrelevant, and (3) any probative value of the evidence was outweighed by its prejudicial effect under Evidence Code section 352.

■ "It is the general rule that questions relating to the admissibility of evidence will not be reviewed on appeal in the absence of a specific and timely objection at the trial on the ground sought to be urged on appeal [citations] . . . ." (*People* v. *Welch* (1972) 8 Cal.3d 106, 114-115 [104 Cal.Rptr. 217, 501 P.2d 225]; *People* v. *Green* (1980) 27 Cal.3d 1, 21-22, fn. 8 [164 Cal.Rptr. 1, 609 P.2d 468]; Evid. Code, § 353, subd. (a).) In addition, a ruling on that ground must have been sought in the trial court. (*People* v. *Alaniz* (1986) 182 Cal.App.3d 903, 907 [227 Cal.Rptr. 575].) The record before us does not reflect that County's objections in the trial court were based on the first two grounds County now urges on appeal.

The first discussion of the issue of the admissibility of evidence of recommendations for remedial measures cited by County in its briefs concerns a photographic enlargement of a portion of a report written by a County employee that counsel for Homeowners wished to use during his opening statement. County objected to references in this report to recommendations for remedial measures on the grounds that "the county does not have an obligation to protect people in slide danger [from] slides that they didn't cause" and that one of the proposed remedial measures, removal of slide debris, was a proper exercise of police power to abate a nuisance for which County could not be held liable. This issue was resolved without a ruling by the trial court when counsel for Homeowners agreed not to use the exhibit.

County next cites a comment made by County during a discussion regarding admissibility of a tape recording. County stated its belief that whether County could have stopped the landslide once it began was not an issue. When later asked by the trial court for the grounds of its objection to the tape recording, County stated that the prejudicial impact of the tape recording outweighed any probative value, and the trial court sustained the objection.

A short time later, during a discussion regarding the admissibility of County employees' reports here at issue, County's counsel stated: "I assume that based upon what the court has said that the court is going to allow documentary evidence reflecting proposals for remedial work and remedial work. I had objected to that. I will not burden the court with any more such objections if that is to be the court's ruling. But I would like to request that I be deemed to make a continuing objection on that . . . ." As specific exhibits were discussed, County objected to certain of the reports on the ground that their prejudicial effect outweighed their probative value.

■■■ County's "continuing objection" to admission of the reports at issue stated no grounds and, therefore, is insufficient to preserve for appeal the issues County now wishes to raise. This would be true even were we to assume County's objection was based on the grounds mentioned during all previous discussions in the case pertaining to evidence of remedial measures. No portion of the record cited by County in its briefs raises the argument that such evidence is inadmissible by reason of Evidence Code section 1151. In fact, as conceded by County at oral argument, no objection ever was made during trial on the basis of that statute.[7]

Even if County's arguments, that it had no duty to protect citizens from a landslide it did not cause, and that whether County could have stopped the landslide after it began was not an issue, could generously be construed as having raised the issue whether evidence of remedial measures was relevant, the trial court was never given an opportunity to rule on this ground. County may not claim the trial court erred in failing to exclude evidence on grounds on which the trial court was not pressed for an express ruling. (*People* v. *Alaniz, supra,* 182 Cal.App.3d 903, 907.)

The sole ground for exclusion of this evidence preserved for appeal by County is that the prejudicial effect of certain of the reports outweighed their probative value. County did not explain in the trial court, and does not explain on appeal, in what manner this evidence was prejudicial within the meaning of Evidence Code section 352. Citing *People* v. *Rance* (1980) 106 Cal.App.3d 245, 250-251 [164 Cal.Rptr. 822], Homeowners point out that for evidence to be prejudicial within the meaning of section 352, it must be unfair and tend to cause the trier of fact to decide the case on an improper basis. Surprisingly, County in its reply brief disclaims any intention to argue that this evidence was prejudicial within the meaning of Evidence Code

---

[7] An argument based on Evidence Code section 1151 was included in County's motion for new trial, but this circumstance does not cure County's failure to make a timely objection at trial on this ground. (*In re Marriage of Huxley* (1984) 159 Cal.App.3d 1253, 1260-1261, fn. 3 [206 Cal.Rptr. 291], disapproved on other grounds in *In re Marriage of Fabian* (1986) 41 Cal.3d 440, 451, fn. 13 [224 Cal.Rptr. 333, 715 P.2d 253].)

section 352 and asserts it simply meant to urge that any error in the admission of this evidence would be prejudicial because it is reasonably probable a result more favorable to County would have occurred in the absence of such error. (*People* v. *Watson* (1956) 46 Cal.2d 818, 837 [299 P.2d 243].) Accordingly, the trial court did not err in overruling County's objection on the ground the probative value of this evidence was outweighed by its prejudicial effect.

IV

*Removal of Slide Debris From Rambla Pacifico Road Was Not an Exercise of Police Power Under Emergency Conditions, Rendering Any Resulting Damages Noncompensable, and Was Not Reasonable as a Matter of Law*

■ County contends it is not liable in inverse condemnation for any damage resulting from the removal of slide debris from Rambla Pacifico Road because clearing the roadway was an exercise of police power performed under emergency conditions. We disagree.

Although an exception to the rule authorizing damages for inverse condemnation has been recognized for injury caused by a valid exercise of police powers under emergency conditions, the scope of this exception has been carefully limited. Our Supreme Court stated in *Holtz* v. *Superior Court* (1970) 3 Cal.3d 296, 305 [90 Cal.Rptr. 345, 475 P.2d 441]: "Recognizing that a broad interpretation of this doctrine of noncompensable loss would completely vitiate the constitutional requirement of just compensation [citation], the courts have narrowly circumscribed the types of emergency that will exempt the public entity from liability.[10]" The court's footnote 10 states: " 'Instances of this character are the demolition of all or parts of buildings to prevent the spread of conflagration, or the destruction of diseased animals, or rotten fruit, or infected trees where life or health is jeopardized.' [Citations.]"

*Rose* v. *City of Coalinga* (1987) 190 Cal.App.3d 1627 [236 Cal.Rptr. 124] involved demolition of the plaintiff's building by the defendant city following the Coalinga earthquake of 1983. The Court of Appeal reversed a grant of summary judgment in favor of the city because there was an unresolved question of fact whether there was "a true emergency" caused by the plaintiff's damaged building in light of the evidence the building was not a hazard, the property was enclosed by a fence, and the city "waited 57 days before the building was destroyed." (*Id.,* at p. 1635.) In so holding, the court relied on the decision in *House* v. *L. A. County Flood Control Dist.* (1944) 25 Cal.2d 384 [153 P.2d 950], which held: " 'The state or its subdivi-

sions may take or damage private property without compensation if such action is *essential* to safeguard public health, safety or morals. . . . *In certain circumstances, however, the taking or damaging of private property for such a purpose is not prompted by so great a necessity as to be justified without proper compensation to the owner. . . .*' (Italics added.) . . . [T]he exercise of the police power, . . . cannot extend beyond the necessities of the case and be made a cloak to destroy constitutional rights as to the inviolateness of private property." (*Id.,* at pp. 388-389.)

In the present case, County asserts the requisite emergency was established by evidence that slide debris on Rambla Pacifico Road was a traffic hazard and that closure of the road would have required area residents to utilize substantially longer alternate routes. The record reflects, however, that Rambla Pacifico Road eventually was closed. Removing slide debris in order to keep a road open to traffic, when alternate routes are available, is not among the narrowly circumscribed types of emergency that can justify the taking of private property without compensation. Clearly, removal of such debris was not strictly necessary, because the road simply could have been closed to traffic as later was done. If County chose to keep the road open, it remained liable for any resulting damage to private property.

The foregoing analysis also disposes of County's related contention that, as a matter of law, it acted reasonably in removing slide debris from the roadway because County's failure to do so would expose it to liability for resulting traffic accidents. County ignores the circumstance that instead it could have closed the road to traffic, as it eventually did. Such action would have eliminated County's potential liability for traffic collisions without contributing to the landslide.

V

*Damages for Emotional Distress May Be Awarded in a Nuisance Action*

■ County asserts "damages for emotional distress are not recoverable in a case such as this where there is no pre-existing relationship or intentional tort." This argument confuses the issue, as to when a cause of action for negligent infliction of emotional distress may be maintained, with the issue presented in the case at hand, which is whether a cause of action alleging nuisance may support an award of damages for emotional distress. The latter issue is well settled.

"It is settled that, regardless of whether the occupant of land has sustained physical injury, he may recover damages for the discomfort and

annoyance of himself and the members of his family and for mental suffering occasioned by fear for the safety of himself and his family when such discomfort or suffering has been proximately caused by a trespass or a nuisance. [Citations.]" (*Acadia, California, Ltd.* v. *Herbert* (1960) 54 Cal.2d 328, 337 [5 Cal.Rptr. 686, 353 P.2d 294]; *Alonso* v. *Hills* (1950) 95 Cal.App.2d 778, 787-788 [214 P.2d 50].) "Damages recoverable in a successful nuisance action for injuries to real property include not only diminution in market value but also damages for annoyance, inconvenience, and discomfort [citation] . . . ." (*City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447, 464 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223]; *Smart* v. *City of Los Angeles* (1980) 112 Cal.App.3d 232, 239-240 [169 Cal.Rptr. 174].) "[M]ental distress caused by the nuisance created and maintained by the defendant is an element of loss of enjoyment. [Citations.]" (*Sturges* v. *Charles L. Harney, Inc.* (1958) 165 Cal.App.2d 306, 323 [331 P.2d 1072].)

Because Homeowners were entitled to recover damages for emotional distress based upon their nuisance cause of action, we need not and do not decide whether such damages also were recoverable based upon their cause of action involving dangerous condition of public property.

## VI

### *That Portion of the Judgment Awarding Damages for Emotional Distress Is Supported by Substantial Evidence*

■ County urges this court to reverse that portion of the judgment awarding damages for emotional distress based upon the jury's findings of liability for dangerous condition of public property and nuisance. County contends there is no substantial evidence to support an award of such damages. We disagree. Because the record reveals substantial evidence to support the jury's verdict regarding nuisance (*Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183]), which in turn supports the award of damages for emotional distress, we need not and do not address County's remaining arguments regarding dangerous condition of public property.

Utilizing a general verdict form with special findings, the jury, by a vote of nine to three, answered in the affirmative the question, "Was the County's construction, operation, or maintenance of the County roads done in an unreasonable manner, thereby creating a nuisance, which nuisance proximately damaged the plaintiffs' properties?" The jury awarded Homeowners damages for emotional distress in an aggregate amount of $112,000.

County's argument that there was no substantial evidence to sustain the jury's verdict as to nuisance is based on the assumption that evidence concerning the effects of clearance of slide debris should not be considered because the theory of liability related to such clearance was "not stated in plaintiffs' notices of governmental tort claims." As discussed in section I of this opinion, we have rejected County's arguments regarding the sufficiency of Homeowners' tort claims and, therefore, evidence of the effects of clearance of slide debris properly was admitted. Because County impliedly concedes that the clearance of slide debris, if properly preserved by the filing of the tort claim, constitutes substantial evidence of nuisance supporting the verdict, we need not and do not further discuss this issue.

## VII

### *The Trial Court Did Not Err in Declining to Utilize the Special Verdict Form Proposed by County*

Without citation of authority, County contends the trial court erred in declining to utilize the special verdict form submitted by County. Instead, the trial court prepared three packets of jury instructions separately addressing Homeowners' causes of action for inverse condemnation, nuisance, and dangerous condition of public property and utilized a general verdict form with special findings which required the jury to answer a series of six questions.[8]

Code of Civil Procedure section 625 provides: "In all cases the court *may* direct the jury to find a special verdict in writing, upon all, or any of the issues, and in all cases may instruct them, if they render a general verdict, to find upon particular questions of fact, to be stated in writing, and may direct a written finding thereon." (Italics added.) A special verdict is required only if "the issue of punitive damages is presented." (*Ibid.*)

"Utilization of a special verdict rather than a general verdict is a matter committed to the sound judicial discretion of the trial court . . . ." (*Klemme* v. *Hoag Memorial Hospital Presbyterian* (1980) 103 Cal.App.3d 640, 645 [163 Cal.Rptr. 109].) No abuse of discretion is shown here.

---

[8] "[1] Has the County damaged, by inverse condemnation, the plaintiffs' properties? . . . [2] Has the County Water District damaged, by inverse condemnation, the plaintiffs' properties? . . . [3] Did the County's construction, operation, or maintenance of County roads create a dangerous condition of public property which proximately damaged the plaintiffs' properties? . . . [4] Was the County's construction, operation, or maintenance of the County roads done in an unreasonable manner, thereby creating a nuisance, which nuisance proximately damaged the plaintiffs' properties? . . . [5] Have the plaintiffs suffered emotional distress as a result of the acts and omissions of the County? . . . [6] What compensation is each plaintiff entitled to for their [*sic*] emotional distress?"

VIII

*The Trial Court Did Not Err in Awarding Prejudgment Interest From June 15, 1981*

■ An award of damages for inverse condemnation shall include interest "computed from the date the taking or damaging was sustained in order to fulfill the constitutional mandate for just compensation. [Citations.]" (*Holtz* v. *San Francisco Bay Area Rapid Transit Dist.* (1976) 17 Cal.3d 648, 657 [131 Cal.Rptr. 646, 552 P.2d 430].) In inverse condemnation matters, each action "must be examined on its own to determine what results ' ". . . 'justice and fairness' . . ." ' require. [Citation.]" (*Smart* v. *City of Los Angeles, supra,* 112 Cal.App.3d 232, 238.) "The authorities are by no means uniform in their holdings with regard to the time from which interest should be computed. [Citations.]" (*Heimann* v. *City of Los Angeles* (1947) 30 Cal.2d 746, 759 [185 P.2d 597], disapproved on another ground, *County of Los Angeles* v. *Faus* (1957) 48 Cal.2d 672, 679 [312 P.2d 680].)

In the present case, County informed the trial court that case authority would support computing interest from any of three possible dates: when damage first appeared, when each house was destroyed, or the date of trial. County urged the court to compute interest from the date each house was destroyed.[9] The trial court concluded interest should be awarded from the date damage to the properties "reached a level which substantially interfered with the owner's use and enjoyment of the property" and asked whether both parties agreed this occurred in June 1981. County stated it agreed that noticeable damage first occurred in June 1981 but argued interest should run only from the date the homes "became unliveable" and were ordered demolished. County noted it had not "argued for some intervening date," stated it did not wish the court "to have to go into some elaborate redoing of evidentiary problems," and asked the court to decide "a question of law as to whether . . . it is the date when these homes became uninhabitable and they were given an order to evacuate, or whether it was the date when some damage first became apparent."

The trial court ruled: "I do not believe that the date the building was destroyed is the proper date because it cannot be that the substantial interference with the owner's use and enjoyment, based upon the testimony I have heard, occurred on the date the buildings were destroyed; that the testimony of each of the witnesses indicated that there was substantial

---

[9] Homeowners construe County's comment that it would not be an "error of law to choose any of these three dates" as a waiver of this issue. The trial court did not interpret this remark as a waiver and neither do we. The record demonstrates County vigorously argued that interest should be computed from the date each home was demolished.

interference with use [and] enjoyment long before that date. [¶]However, based on the testimony of the witnesses, there is no evidence from which to conclude, to precisely state, which date it was between June of 1981 and the destruction from which I could conclude that there is any substantial interference, other than the interference that began on the dates in June of 1981 when the first significant cracks appeared . . . . [¶]So that nothing has been brought out to indicate that any date other than June, 1981 would be a date which the court could find substantial interference. So the court finds substantial interference in June of 1981, and that will be the date, there being no other evidence from which I could conclude otherwise." When asked by the trial court whether it could produce additional evidence on this issue, County conceded it could not.

The trial court employed the correct standard. Our Supreme Court has held that "interest must be computed from the date the taking or damaging was sustained . . . ." (*Holtz* v. *San Francisco Bay Area Rapid Transit Dist., supra,* 17 Cal.3d 648, 657.) In determining the related question as to when a cause of action for inverse condemnation accrues, a "taking" occurs "when the damaging activity has reached a level which substantially interferes with the owner's use and enjoyment of his property." (*Smart* v. *City of Los Angeles, supra,* 112 Cal.App.3d 232, 235.) The trial court's finding that this occurred long before the residences were demolished is supported by substantial evidence.

We also agree with the trial court it is possible that the time at which substantial interference with the use and enjoyment of the properties occurred was later than June 1981, but no evidence was presented from which the court could make such a determination. In the absence of such evidence, the trial court correctly computed interest from June 15, 1981, when damage to the properties became apparent.

HOMEOWNERS' CROSS-APPEAL

IX

*The Trial Court Did Not Err in Reducing the Damages Awarded to Plaintiff Forrest Because the Lender Reconveyed Its Trust Deed*

As a result of the landslide which necessitated the demolition of plaintiff Forrest's residence, Security Pacific Bank, without payment, reconveyed a trust deed it held on that property and thus cancelled an indebtedness of $110,000. Forrest contends the trial court erred in reducing the award of damages to him by this amount.

The owner of property taken or damaged by a public entity is entitled to just compensation. (Cal. Const., art. I, § 19.) Although the usual measure of just compensation is the fair market value of the property taken, the award of damages should be sufficient to make the owner whole but not result in a windfall. (*McMahan's of Santa Monica* v. *City of Santa Monica* (1983) 146 Cal.App.3d 683, 700 [194 Cal.Rptr. 582].)

Forrest asserts that no windfall would have resulted had the trial court ignored the reconveyance and awarded him the full value of the destroyed property. The fact is, however, that prior to the landslide Forrest owned a house encumbered by a $110,000 loan evidenced by a trust deed. As a result of the landslide, this debt was forgiven and the trust deed reconveyed. If Forrest were awarded damages in the amount of the full market value of the residence, he would receive a windfall of $110,000 over the amount of the damage he sustained.

Citing *Helfend* v. *Southern Cal. Rapid Transit Dist.* (1970) 2 Cal.3d 1 [84 Cal.Rptr. 173, 465 P.2d 61, 77 A.L.R.3d 398], Forrest further contends that any windfall should benefit Forrest rather than County. The decision in *Helfend* reaffirmed the collateral source rule, which provides "that if an injured party receives some compensation for his injuries from a source wholly independent of the tortfeasor, such payment should not be deducted from the damages which the plaintiff would otherwise collect from the tortfeasor. [Citation.]" (*Id.,* at p. 6.)

The first flaw in Forrest's argument is that he cites no authority for the proposition that the collateral source rule applies in an action for inverse condemnation. Additionally, the reasons for the rule announced in *Helfend* are inapplicable to the present case.

*Helfend* involved a tort action in which the plaintiff had received benefits from his medical insurance coverage. In holding the plaintiff's damages should not be diminished by the amount so received, the high court stated: "a person who has invested years of insurance premiums to assure his medical care should receive the benefits of his thrift. [Fn. omitted.]" (2 Cal.3d at pp. 9-10.) The court further observed that in many cases the plaintiff would not secure a double recovery because insurance policies increasingly provide for subrogation or refund of benefits upon a tort recovery.

Neither of the foregoing factors applies in the present case. Security Pacific Bank's reconveyance of its trust deed and forgiveness of the debt was not requested by Forrest, nor had he incurred any expense in obtaining the benefit he received. In reconveying the trust deed, Security Pacific Bank

relinquished its interest in the property and therefore retained no right of subrogation.

The high court expressly noted the limited nature of its holding in *Helfend*: "There are many sorts of collateral sources and a great variety of contexts in which the 'rule' might be applied. We expressly do not consider or determine the appropriateness of the rule's application in the myriad of possible situations which we have not discussed or which are not presented by the facts of this case." (2 Cal.3d at p. 6, fn. 3; see *Waite* v. *Godfrey* (1980) 106 Cal.App.3d 760, 771 [163 Cal.Rptr. 881].) We hold the collateral source rule does not apply in the present case, and the trial court did not err in reducing by $110,000 the damages awarded to plaintiff Forrest.

## X

*The Trial Court Did Not Err in Determining the Rate of Prejudgment Interest*

The California Supreme Court in *Redevelopment Agency* v. *Gilmore* (1985) 38 Cal.3d 790, 802 [214 Cal.Rptr. 904, 700 P.2d 794], held that "the just compensation clause is not necessarily satisfied when a rate of interest set by statute is applied as a ceiling in condemnation cases." Instead, interest should be awarded at "the rate which would have been earned by ' "a reasonably prudent person investing funds so as to produce a reasonable return while maintaining safety of principal." ' [Citations.]" (*Id.*, at p. 803; *Salton Bay Marine, Inc.* v. *Imperial Irrigation Dist.* (1985) 172 Cal.App.3d 914, 959, 961 [218 Cal.Rptr. 839].)

The year following the decision in *Gilmore,* the Legislature amended Code of Civil Procedure sections 1268.311 and 1268.350 to provide that the rate of interest awarded in inverse condemnation proceedings shall be the "apportionment rate calculated by the Controller as the rate of earnings by the Surplus Money Investment Fund for each six-month period." (Code Civ. Proc., § 1268.350, subd. (a)(1).) These statutory amendments became effective January 1, 1987. The trial court in the present case ruled that Code of Civil Procedure section 1268.350 "applies to interest calculations after Jan. 1, 1987, but does not apply retroactively."

The trial court considered evidence provided by the parties regarding rates of return on various investments for the period June 15, 1981, to December 31, 1987. Homeowners argued that a prudent investor in 1981 would have invested exclusively in five- and six-year U.S. Treasury notes

bearing interest in excess of 14 percent.[10] The trial court found this argument "not convincing," because investments with shorter terms were earning far greater interest, there is no indication investors realized at that time that interest rates were about to decline, and it is "inconceivable" a prudent investor would have relied exclusively on one investment to the exclusion of all others.

Noting it had "exhaustively examined the figures appended to [County's] briefs, comparing long and short term certificates, Treasury bills for 6 months, Treasury notes for one year and more, AAA municipal and corporate bonds, common stock dividends, and the prime rate, all throughout the period in question," the trial court concluded: "The State['s] surplus money fund reflects the consequence of actual investment decision making, rather [than] speculation on what one might have done. This court, though not bound by this rate, can see no reason not to utilize it as a guide to reasonable return on investment over the period in question . . . ."

■ Homeowners assert the trial court "cloaked its use of the statutory rate in a supposed factual finding" and labels as a "transparent fiction" the trial court's finding that the apportionment rate represents what a prudent investor would have earned. We find no basis for such accusations.

The high court in *Gilmore* stated that in order to determine the return a prudent investor might have achieved, "the trial court should examine . . . the rates prevailing . . . for all forms of money-market obligations, governmental and private, which prudent depositors and investors normally purchase for income purposes, and whose terms or maturities fall within the period [at issue]." (*Redevelopment Agency* v. *Gilmore, supra,* 38 Cal.3d 790, 806, fn. omitted.) The trial court in the present case conducted a far more extensive review of available investments than required by *Gilmore.* Therefore, unless the trial court's findings are based on incorrect legal principles, they must be upheld if supported by substantial evidence. (*Id.,* at p. 807.)

The trial court expressly stated its understanding that it was not bound by the rate of return earned by the state's Surplus Money Investment Fund but, rather, was persuaded, as the Legislature apparently had been, that this was a reliable measure of the return a prudent investor actually might have achieved during the period at issue. The circumstance that Code of Civil Procedure section 1268.350, subdivision (a)(1), requiring reliance on such evidence, was not in effect during the entire period in question did not prohibit the trial court from concluding, as a question of fact rather than law, that this standard was appropriate.

[10] A quite similar contention was rejected in *Coachella Valley Water Dist.* v. *Western Allied Properties, Inc.* (1987) 190 Cal.App.3d 969, 979-980 [235 Cal.Rptr. 725].

Homeowners argue that the earnings of the Surplus Money Investment Fund are irrelevant because the state's investment goals and strategies differ from those of a private investor. This assertion involves a question of fact determined by the trial court and was rejected by that court. We hold the trial court's findings are supported by substantial evidence.[11]

WATERWORKS'S APPEAL

XI

*Waterworks Is Entitled to Recover Its Trial Costs*

 The trial court, being bound by the decision in *Blau* v. *City of Los Angeles* (1973) 32 Cal.App.3d 77 [107 Cal.Rptr. 727], denied Waterworks recovery of trial costs despite the fact it prevailed in the trial court. We conclude that *Blau* and *Drennen* v. *County of Ventura* (1974) 38 Cal.App.3d 84 [112 Cal.Rptr. 907], which reached the same result, were wrongly decided and reverse the trial court's order.

Waterworks was a "prevailing party" in the trial court as defined by Code of Civil Procedure section 1032, subdivision (a)(4).[12] Subdivision (b) of that statute provides: "Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." It has long been held, however, that in condemnation proceedings this statutory right is superseded if an award of costs would infringe the right of the property owner to "just compensation" as guaranteed by article I, section 19, of the California Constitution. Where private property is taken or damaged for a public use, requiring property owners to bear their litigation costs or pay the government's costs would deny them their "constitutional right to full compensation for their property . . . ." (*In re Redevelopment Plan for Bunker Hill* (1964) 61 Cal.2d 21, 69 [37 Cal.Rptr. 74, 389 P.2d 538].)

The principle that, in condemnation proceedings, the owner of property taken or damaged for public use shall not be burdened by imposition of the

---

[11] The appellate court in *San Bernardino County Flood Control Dist.* v. *Grabowski* (1988) 205 Cal.App.3d 885, 902 [252 Cal.Rptr. 676], held that the trial court in that case "erred in utilizing market rates of interest below the 'legal interest' of 10 percent in arriving at an overall interest figure." (Fn. omitted.) This issue was not raised by the parties in the present appeal and, therefore, we do not consider it.

[12] Code of Civil Procedure section 1036 provides that in an inverse condemnation proceeding in which judgment for plaintiff is rendered awarding compensation for a taking of real property, plaintiff shall be awarded costs "including reasonable attorney, appraisal, and engineering fees . . . ." This statute is inapplicable because judgment awarding compensation for a taking of real property was not rendered for Homeowners in their action against Waterworks.

costs incurred by the governmental entity has been broadly construed in implementing the foregoing policy. In *Collier* v. *Merced Irr. Dist.* (1931) 213 Cal. 554 [2 P.2d 790], the property owner, a "riparian proprietor" on the Merced River, sued the irrigation district for maintaining a dam which decreased the water level of the river. The evidence demonstrated, however, that construction of the dam benefited the property owner apparently by reclaiming a portion of his land and increasing the value of his property. The irrigation district prevailed at trial, and the property owner was denied his costs of suit. The high court held: "The cause having been converted practically into a condemnation proceeding and [the property owner] having been paid in 'benefits', the constitutional provision above quoted seems to be sufficient to vouchsafe the award to him free from the costs of respondent and with his own costs as well. [Citation.]" (*Id.,* at p. 572.)

*In re Redevelopment Plan for Bunker Hill, supra,* 61 Cal.2d 21, arose from a special proceeding brought by the Community Redevelopment Agency of the City of Los Angeles (the Agency) to determine the validity of the Bunker Hill redevelopment plan and permanently enjoin the institution of any action raising an issue which could have been litigated in that special proceeding. Actions challenging the redevelopment plan filed by property owners within the project area were consolidated with the special proceeding. The Agency prevailed at trial, and costs were awarded to the Agency against some of the property owners. The order imposing costs against the property owners was reversed, because the judgment had determined that the redevelopment project constituted a public use (thus removing an issue from any later condemnation proceedings instituted by the Agency against these property owners). "Under such circumstances . . . the proceedings should logically be considered in the nature of eminent domain, with no costs to be assessed against the property owners." (61 Cal.2d at p. 71.) The failure of the property owners to prevail in their attack on the redevelopment plan did not alter this result, because the proceedings had determined that their property was subject to condemnation for a public use: "Even though they may not prevail on this issue in either trial court or on appeal, it appears from the most recent expressions of the court that they are entitled to be free from costs in litigating it. [Citations.]" (*Ibid.*)

In *City of Los Angeles* v. *Ricards* (1973) 10 Cal.3d 385 [110 Cal.Rptr. 489, 515 P.2d 585], our Supreme Court recognized, in dictum, that the broad construction (encompassing costs) which is given to the constitutional guaranty of full compensation does not apply in inverse condemnation proceedings where there is a judicial determination that the plaintiff's property was *not* taken or damaged. The high court stated: "Property owners are, of course, not constitutionally entitled to costs in inverse condemnation actions if they are unable to prove that there has been

a taking or damaging of their property by the defendant governmental entity. [Citation.] In such a circumstance the constitutional doctrine of full compensation underlying the award of costs is plainly inapplicable to owners who initiated the unsuccessful litigation." (*Id.,* at p. 391.)[13]

Although the foregoing observation was unnecessary to the decision and therefore does not constitute binding precedent (*Consumers Lobby Against Monopolies* v. *Public Utilities Com.* (1979) 25 Cal.3d 891, 902 [160 Cal.Rptr. 124, 603 P.2d 41]), "[e]ven if properly characterized as dictum, statements of the Supreme Court should be considered persuasive." (*United Steelworkers of America* v. *Board of Education* (1984) 162 Cal.App.3d 823, 835 [209 Cal.Rptr. 16].) "[I]t does not follow that the *dictum* of a court is always and at all times to be discarded. A correct principle of law may be announced in a given case, although it may not be necessary to there apply it . . . ." (*San Joaquin etc. Irr. Co.* v. *Stanislaus* (1908) 155 Cal. 21, 28 [99 P. 365], italics in original.) Such dictum, while not controlling authority, carries persuasive weight and should be followed where it demonstrates a thorough analysis of the issue or reflects compelling logic. (*United Steelworkers of America* v. *Board of Education, supra,* 162 Cal.App.3d 823, 835; *Graydon* v. *Pasadena Redevelopment Agency* (1980) 104 Cal.App.3d 631, 643 [164 Cal.Rptr. 56]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 785, p. 756.)

The dictum in *Ricards* reflects compelling logic.[14] The constitutional guaranty of full compensation for property taken or damaged for a public use does not apply where a property owner sues a public entity for inverse condemnation but is unable to prove the subject property was taken or damaged by that entity. In such circumstances, the prevailing party's statutory right to costs applies without constitutional limitation.

A contrary result was reached by Division Three of this court in *Blau* v. *City of Los Angeles, supra,* 32 Cal.App.3d 77. In that case, the city prevailed

---

[13] In *Klopping* v. *City of Whittier* (1972) 8 Cal.3d 39 [104 Cal.Rptr. 1, 500 P.2d 1345], two property owners, Klopping and Sarff, brought separate suits for inverse condemnation which were dismissed after the city's demurrers were sustained. The Supreme Court affirmed the dismissal as to Klopping but reversed as to Sarff. Despite the circumstance that, as to Klopping, the city was the prevailing party both in the trial court and on appeal, costs on appeal were awarded to both property owners. (*Id.,* at p. 59.)

The result in *Klopping* was reached without discussion or explanation and is inconsistent with the later expression on this issue in *Ricards.* Accordingly, we follow *Ricards.*

[14] Homeowners attempt to distinguish *Ricards* on the basis that the case discusses whether property owners are entitled to recover their costs rather than the issue in the present case, which is whether property owners are liable for the costs of the public entity. The same considerations which mandate that property owners in condemnation proceedings recover their costs also require that such property owners not be liable for the costs incurred by the public entity. In either circumstance, the issue is whether an award of costs would infringe upon the constitutional right of property owners to full compensation. Therefore, Homeowners' attempt to distinguish *Ricards* is unavailing.

in an inverse condemnation action and was awarded costs of suit. The Court of Appeal reversed the award of costs. Relying on the decision in *In re Redevelopment Plan for Bunker Hill, supra,* 61 Cal.2d 21, the court in *Blau* concluded that because the action involved "eminent domain principles . . . plaintiffs, though unsuccessful in the trial court, were constitutionally entitled to be free of costs in litigating the issue of whether development of a public street caused damages to their real property. [Citation.]" (*Blau v. City of Los Angeles, supra,* 32 Cal.App.3d 77, 89.) In *Drennen v. County of Ventura, supra,* 38 Cal.App.3d 84, 88, the same division held, without discussion, that property owners who brought an unsuccessful action for inverse condemnation were "entitled to their trial costs." We find the holdings in *Blau* and *Drennen* are unsupported by the authority cited and contrary to the reasoning expressed in the Supreme Court's opinion in *Ricards, supra,* 10 Cal.3d 385.[15] Accordingly, we reverse the trial court's order denying costs to Waterworks and remand the matter for determination of the amount of such costs.

## DISPOSITION

The trial court's order denying costs to Waterworks is reversed, and the case is remanded to the trial court for determination of the amount of such costs. In all other respects the judgment is affirmed. Homeowners shall recover their costs on appeal from County, and Waterworks shall recover its costs on appeal from Homeowners.

McClosky, Acting P. J., and Einstein, J.,* concurred.

A petition for a rehearing was denied October 16, 1989, and on October 24, 1989, the opinion was modified to read as printed above. The petition of appellant County of Los Angeles for review by the Supreme Court was denied December 13, 1989.

---

[15] The court that decided *Blau* did not have the benefit of the Supreme Court's reasoning in *Ricards,* because the decision in *Blau* preceded that in *Ricards* by several months. Curiously, however, the opinion in *Drennen* cites *Ricards* as its sole authority for awarding costs, despite the circumstance that *Ricards* compels the opposite result. (*Drennen v. County of Ventura, supra,* 38 Cal.App.3d 84, 88.)

* Assigned by the Chairperson of the Judicial Council.