[Civ. No. 59349. Second Dist., Div. Two. Jan. 23, 1981.]

FLORENCIO GONZALEZ LOPEZ et al.,
Plaintiffs and Appellants, v.
SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP
et al., Defendants and Respondents.

674

COUNSEL

Rostagno & Jensen, Rostagno, O'Sullivan & Jensen, James A. Jensen and Dennis J. O'Sullivan for Plaintiffs and Appellants.

George Deukmejian, Attorney General, N. B. Peek and Kristin G. Hogue, Deputy Attorneys General, Thelen, Marrin, Johnson & Bridges, Curtis A. Cole, Fidler, Bell & Dyer and Michael A. Bell for Defendants and Respondents.

## OPINION

**THE COURT.\***—In June of 1975, appellants were involved in an automobile accident wherein Mineous Orville Hudgeons' vehicle struck theirs after he allegedly suffered an epileptic seizure. Suit was filed against him[1] and the respondents herein. The alleged liability of the latter was premised upon the failure of Southern California Permanente Medical Group (Kaiser) and Harry D. Blunden, M.D. (Blunden) to have reported Hudgeons' condition pursuant to Health and Safety Code section 410, subdivision (1)[2] and upon the State of California's (the State) failure to revoke Hudgeon's driver's license even though it was aware he was an epileptic.

The matter was resolved in the trial court when the State was dismissed prior to trial, Blunden prevailed on a motion for nonsuit following presentation of appellants' case in chief, and the jury found Kaiser was not negligent in failing to comply with the requirement of the statute.

Stated generally, it is contended on this appeal that these results were arrived at erroneously. We affirm the judgment.

### The State.

Some three months after the accident described, appellants filed with the California State Board of Control their statutory claim respecting the incident, wherein they alleged the State had negligently issued a driver's license to Hudgeons in spite of his epileptic condition. That claim was denied. Appellants then filed the suit herein, maintaining that the State had negligently issued, renewed or failed to revoke Hudgeons' license when it knew him to be a person having a disorder characterized by lapses of consciousness.

■ About two and one-half years later, when discovery had established the State was *not* aware of Hudgeons' epilepsy until after the

---

\*Before Fleming, Acting P. J., Compton, J., and Beach, J.

[1]Hudgeons was dismissed as a defendant after inception of the action and is not a party to this appeal.

[2]The statute provides: "(1) All physicians shall report immediately to the local health officer in writing, the name, date of birth, and address of every person diagnosed as a case of a disorder characterized by lapses of consciousness."

accident occurred, appellants sought by motion to amend their complaint so as to allege the State was aware Hudgeons had, prior to the accident, failed to comply with accident reporting and financial responsibility provisions of the Vehicle Code but that the State nevertheless neglected to suspend or revoke his driver's license. The motion was resisted on the basis of the principle that a complaint filed against a public entity which, as in the present circumstances, must be preceded by a claim, may not allege a cause of action not mentioned in the claim, with the derivative result that the attempted amendment, proffered two and a half years after the filing of the only claim submitted and which sought to allege a cause of action not mentioned in that claim, was improper and that any further claim was barred as untimely. The trial court found this argument persuasive in dismissing the State from the action. That determination, in our view, must be sustained. (See *Shelton* v. *Superior Court* (1976) 56 Cal.App.3d 66, 82-83 [128 Cal.Rptr. 454]; *Connelly* v. *State of California* (1970) 3 Cal.App.3d 744, 747, 753-54 [84 Cal.Rptr. 257].)

Nor is this conclusion altered by considerations relating to the doctrine of substantial compliance, since that doctrine does not operate to cure omission of essential facts necessary to constitute a valid claim. (See *City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447, 454-57 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223]; *Tyus* v. *City of Los Angeles* (1977) 74 Cal.App.3d 667, 671-72 [141 Cal.Rptr. 630]; *Shelton* v. *Superior Court, supra*, 56 Cal.App.3d 66, 82.

Finally, to the extent appellant suggests claim statutes, in providing "preferential treatment" to the State in litigation like that here present, are unconstitutional, it is enough to say that contention has been previously rejected (*Stanley* v. *City and County of San Francisco* (1975) 48 Cal.App.3d 575 [121 Cal.Rptr. 842]) and cannot, at least on the record before us, be reexamined.

*Blunden.*

At the trial of the cause, Hudgeons testified as to the fact of his epileptic condition and to his conclusion he must have had a seizure at the time of the accident. He likewise testified he was treated by Blunden in 1965, but not for epilepsy. Rather, according to Blunden, an orthopaedic surgeon, Hudgeons had been referred to him by his employer in

connection with a back condition which ultimately required a spinal fusion performed by Blunden.

It is not contested Blunden did not himself diagnose Hudgeons' epilepsy; indeed it was established Blunden had never in 38 years of practice diagnosed or treated a patient for that condition. It did appear Hudgeons advised Blunden of the disorder and that Blunden took it into account in his considerations respecting surgery.

The trial court concluded, nevertheless, that "There is no evidence in the record that this court believes would substantiate that Dr. Blunden either diagnosed Mr. Hudgeons or that Dr. Blunden had notification of such diagnosis. He had a statement by Mr. Hudgeons which, in this court's opinion, is not a diagnosis as contemplated under Health and Safety Code section 410."

Based upon these conclusions, the trial court granted the nonsuit motion, believing there was no evidence which could support a verdict in appellants' favor against Blunden. We concur in this determination.

■ Whatever may be the scope of the obligation created by the statute in question, it is clear its application in all events is confined to a case where the physician in question knows of a *diagnosis* of the specified disorders. The trial court here, on substantial evidence, found otherwise. And even if we were to accept appellants' claim that the term "diagnosis" should be understood as meaning no more than the *conclusion* of a physician, rather than the procedures upon which the the conclusion is based, it would yet be true there is nothing to show Blunden ever made such a conclusion. On the contrary, he testified:

"Q. Do you recall then that Mr. Hudgeons was, in fact, in your opinion, suffering from epilepsy?

"A. No. I didn't have any opinion about that.

"Q. Did you know that he in fact had that disorder?

"A. I only knew what he told me, that he had been receiving medication."

Accordingly, the trial court's action respecting Blunden must also be sustained.

*Kaiser.*

When the matter herein proceeded with Kaiser as the only remaining defendant, the jury, as noted previously, rendered its verdict that Kaiser was not negligent in failing to comply with statutory reporting requirements respecting Hudgeons' epileptic condition. That conclusion was preceded by the introduction of evidence establishing, inter alia, the following facts upon which, it seems clear, the conclusion was based.

In January of 1957, Hudgeons was admitted to Harbor General Hospital because of convulsions, with a resulting diagnosis of "convulsive episode, etiology unknown." In November of that year he was hospitalized at Torrance Memorial Hospital, where he underwent tests which included an electroencephalogram and a pneumoencephalogram. He became a member of Kaiser in 1962, at which time his medical records were obtained from Harbor General and Torrance Memorial. He discontinued treatment at Kaiser in 1969. When first a patient there he requested one of Kaiser's doctors to advise his employer by letter of his epileptic condition. That request was satisfied. A second letter to the same effect was sent to the employer in 1965. Hudgeons was required by his employer to submit to annual medical examinations by the employer's physicians.

When examined respecting Kaiser's failure to comply with section 410, subdivision (1), one of its doctors testified: "The reason that I assumed it (i.e., that someone other than Kaiser had already made the report) is that the general philosophy of reporting diseases is that the initial diagnosing physician is the one who reports the condition and not those who come in contact with the patient later or treat him later. There is a differentiation very clearly in my mind and in that of my colleagues, as I understand it, between the diagnosis of a disease and the treatment of the disease.

"
. . . . . . . . . . . . .

"I continued treatment that had been well established by two outstanding hospitals after he had been seen by many physicians, and after he had had treatment that had already continued for five years before he saw me.

"When I saw him, it was apparent that the diagnosis had been established, he was a long-term patient, and that he had—it was now a matter of simply continuing treatment that had already been established. He had been worked up at Harbor General for 12 days and seen by many doctors; he had been in Torrance Memorial Hospital for 10 days; and therefore, I felt that they undoubtedly had made the diagnosis and had reported him."

At the conclusion of the evidence, the jury received instructions which included those relating to burden of proof, the definitions of ordinary care and negligence per se based upon violation of statute. Section 410, subdivision (1) was likewise read to them.

■ Since there is substantial evidence to overcome a rebuttable presumption Kaiser was negligent by virtue of having failed to comply with section 410 and therefore to justify the jury's conclusion, it would appear, though such is not entirely clear from appellants' brief, appellants' contention is that violation of the statute creates a *conclusive* presumption of negligence. That, of course, is not the case, as Evidence Code section 669 makes clear. Thus it provides in pertinent part that: "(a) The failure of a person to exercise due care is presumed if: (1) He violated a statute...; ... "(b) This presumption may be rebutted by proof that: (1) The person violating the statute, ordinance, or regulation did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law;..."

Accordingly, the jury's verdict was properly arrived at under valid instructions.

The judgment is affirmed.

Appellants' petition for a hearing by the Supreme Court was denied April 1, 1981.