[No. A051240. First Dist., Div. Three. Dec. 5, 1990.]

DOLLIE WHITE, Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF
SAN FRANCISCO, Respondent;
CITY AND COUNTY OF SAN FRANCISCO et al., Real Parties in
Interest.

COUNSEL

Hersh & Hersh, Nancy Hersh and Joseph Boyle for Petitioner.

No appearance for Respondent.

Louise H. Renne, City Attorney, Kimberly A. Reiley and G. Scott Emblidge, Deputy City Attorneys, for Real Parties in Interest.

OPINION

**MERRILL, Acting P. J.**—Petitioner (hereafter plaintiff) challenges a superior court summary adjudication order. The order prevents her

from pursuing two causes of action because her written claim against the City and County of San Francisco (hereafter San Francisco) did not mention alleged problems with San Francisco's hiring, training, retention, supervision and discipline of employees. We conclude that the court erred in its application of the claim requirement.

On September 11, 1989, plaintiff presented the following claim against San Francisco: "On or about May 26, 1989, at Third and Quesada Streets in San Francisco, Claimant, a Muni bus driver, was requested by a fellow employee to assist in trying to move a broken-down Muni coach. Claimant parked her coach and got out to assist her fellow employee. At that time she was approached by a San Francisco Police officer [Officer J. Sanford] who asked her to show her driver's license. She asked the officer what she had done wrong. The officer did not answer her, but instead grabbed her hands, forced them behind her back and slammed her face into a wall. Claimant was placed in handcuffs and transported to Potrero Station.

"The officer subsequently arrested her for battery on a police officer, resisting arrest, and for a traffic infraction. The officer denied her medical attention at the scene (he cancelled the ambulance that had been called). The officer acted in a brutal manner towards Ms. White and towards those people at the scene who came to her aid.

"Ms. White was falsely arrested and imprisoned. She was also brutally beaten by the officer. She was denied medical assistance at the scene. As a proximate cause of the officer's deliberate behavior, Ms. White suffered, and continues to suffer, physical and mental injuries. She has only recently returned to work, and then only on a restricted basis."

San Francisco denied plaintiff's claim. She then filed a complaint against San Francisco and individual defendants alleging causes of action for (1) false imprisonment; (2) negligent hiring, training and retention; (3) intentional failure to train, supervise and discipline; (4) assault and battery; (5) intentional infliction of emotional distress; and (6) negligent infliction of emotional distress. The complaint alleged an abbreviated version of the facts in the claim. Her second and third causes of action also alleged that San Francisco was reckless in hiring, firing, supervising, disciplining and training its police force and intentionally failed to adequately train, supervise and discipline its police force.

Defendants (real parties in interest in this proceeding) moved for summary adjudication to prevent plaintiff from proving her causes of action for

negligent hiring, training and retention and for intentional failure to train, supervise and discipline. After hearing the court granted the motion. This petition followed.

■ The defendants' theory below and in this court is that the barred causes of action cannot be brought because they are not "fairly reflected" in the written claim filed with San Francisco. Defendants rely upon a string of decisions preventing plaintiffs from departing from the claims submitted to public entities. (*Fall River Joint Unified School Dist.* v. *Superior Court* (1988) 206 Cal.App.3d 431, 434-436 [253 Cal.Rptr. 587]; *Donohue* v. *State of California* (1986) 178 Cal.App.3d 795, 802-805 [224 Cal.Rptr. 57]; *Nelson* v. *State of California* (1982) 139 Cal.App.3d 72, 79-81 [188 Cal.Rptr. 479]; *Lopez* v. *Southern Cal. Permanente Medical Group* (1981) 115 Cal.App.3d 673, 677 [171 Cal.Rptr. 527]; *Connelly* v. *State of California* (1970) 3 Cal.App.3d 744, 753 [84 Cal.Rptr. 257].)

In *Connelly* v. *State of California, supra,* 3 Cal.App.3d 744, the claim alleged that employees of the Department of Water Resources negligently provided plaintiff with inaccurate information about the anticipated rise in the Sacramento River. *Connelly* affirmed a superior court ruling barring suit on allegations that state-operated dams negligently released water. (*Id.,* at p. 753.)

In *Lopez* v. *Southern Cal. Permanente Medical Group, supra,* 115 Cal.App.3d 673, the claim alleged that the state had negligently issued a driver's license to an epileptic. *Lopez* affirmed dismissal of an action that alleged that the state knew the driver had failed to comply with accident reporting and financial responsibility provisions of the Vehicle Code but nevertheless neglected to suspend or revoke his driver's license. (*Id.,* at p. 677.)

Plaintiff in *Nelson* v. *State of California, supra,* 139 Cal.App.3d 72, filed a claim alleging that prison doctors failed to diagnose and treat his diabetes (a claim barred by the state's immunity). *Nelson* affirmed a superior court ruling preventing plaintiff from alleging that the prison had failed to summon immediate and competent medical care (an action available to plaintiff under an exception to the immunity statutes). The court explained: "Plaintiff's claim could be said to state facts sufficient to support the amended complaint *only* if we hold, as a matter of statutory interpretation, that the act of a doctor or other such professional who, in the course of treatment of a prisoner, fails to prescribe and/or provide the correct medication is the legal equivalent to a failure to summon medical care as set forth in section 845.6 of the Government Code. [¶] Addressing that issue, we hold that the

two are *not* equivalent. Once a practitioner has been summoned to examine and treat a prisoner, he or she is under a duty to exercise that degree of diligence, care, and skill such as is ordinarily possessed by other members of the profession. Failure to do so is malpractice. [Citation.] Failure of a practitioner to prescribe or provide necessary medication or treatment to one he or she has been summoned to assist is a breach of such duty and as such is also medical malpractice and clearly, as a matter of the plain meaning of the statutory language, cannot be characterized as a failure to summon medical care." (*Id.*, at pp. 80-81.)

The *Donohue* claim recited that the Department of Motor Vehicles negligently permitted an uninsured motorist to take a driver's test and drive on a public street. *Donohue* affirmed judgment on the pleadings barring plaintiff from alleging negligent instruction, direction and control over the driver during the driving examination and alleging failure to properly supervise the driver's performance of the examination. The court held that "[t]he act of permitting an uninsured motorist to take a driving test is not the factual equivalent of the failure to control or direct the motorist in the course of his examination." (*Donohue* v. *State of California, supra,* 178 Cal.App.3d at p. 804.)

*Fall River Joint Unified School Dist.* v. *Superior Court, supra,* 206 Cal.App.3d 431, also limited plaintiff to facts alleged in the claim. The written claim said that a dangerous and defective door caused plaintiff's head injury because it closed with excessive force. Plaintiff's complaint added a count for the school district's failure to supervise dangerous horseplay. The *Fall River* court directed the superior court to grant judgment on the pleadings barring the added count. The court rejected plaintiff's substantial compliance argument: "Such an obvious subversion of the purposes of the claims act, which is intended to give the governmental agency an opportunity to investigate and evaluate its potential liability, is unsupportable. [Citation.] Here, defendant was given no warning that it might be sued for its employee's failure to supervise plaintiff and his fellow students, and had no opportunity to consider the validity of such a claim until the filing of the amended complaint. Accordingly, insofar as his third cause of action is concerned, plaintiff did not even rise to the level of minimal, much less substantial, compliance with the claim filing prerequisites." (*Id.*, at pp. 435-436.)

Defendants here contend that plaintiff's written claim does not fairly reflect the failure to train theory underlying the causes of action barred by the superior court here. They note that plaintiff's "government claim con-

tains no allegations that [San Francisco] negligently supervised or intentionally failed to train Officer Sanford."

The most recent decisions in the *Connelly/Nelson/Fall River* line of cases, while reciting the principles of the earlier cases, have reached opposite conclusions. In *Smith* v. *County of Los Angeles* (1989) 214 Cal.App.3d 266 [262 Cal.Rptr. 754], the claim said that the county had cut into a hill to create a road and that this cut had removed support for residences and created a landslide danger. Defendants asked the trial court to bar plaintiffs from contending at trial that clearing debris from an earlier slide from the roadway and water runoff over the roadway contributed to the recent landslide. The trial court refused and the appellate court agreed. After discussing the earlier cases, *Smith* concluded that although the claims did not expressly encompass the additional facts about removing slide debris and about water runoff over the roadway, these new allegations were not " 'based upon a set of facts entirely different from those first noticed.' " (*Id.*, at pp. 279-280, quoting *Fall River Joint Unified School Dist.* v. *Superior Court, supra*, 206 Cal.App.3d at p. 435.)

*Smith* noted that " '[s]o long as the policies of the claims statutes are effectuated, they should be given a liberal construction to permit full adjudication on the merits. . . .' " (*Smith* v. *County of Los Angeles, supra*, 214 Cal.App.3d at p. 280, quoting *Minsky* v. *City of Los Angeles* (1974) 11 Cal.3d 113, 123 [113 Cal.Rptr. 102, 520 P.2d 726].) It applied this principle: "We agree with the trial court that Homeowners' assertions at trial regarding the clearing of slide debris from the roadway and the presence of water runoff over the roadway are fairly reflected in these claims. Necessary maintenance of the roadway, such as the clearing of slide debris, and conditions resulting from the presence of the road, such as the channeling of water runoff, are matters closely connected with construction of the road." (*Smith, supra*, at p. 280.)

*Blair* v. *Superior Court* (1990) 218 Cal.App.3d 221 [267 Cal.Rptr. 13], reached the same result. The written claim said that the plaintiff was riding in a pickup going east, on a downgrade, that the highway was iced over, and that the car went out of control and collided with a tree. Plaintiff attributed the injury to negligent maintenance and construction of the highway surface and failure to sand and care for the highway. The superior court struck the following allegations: " ' . . . [I]n addition, at that point, the roadway crosses a stream over a culvert or bridge requiring guard rails where there was no guard rail; in addition, the slope of the road is such that a vehicle striking ice is carried off the road causing it to strike adjacent roadside barriers including large trees that have been left close to the road also

without a guard rail. [¶] 6. No warning signs were in place nor any other device designed to either advise the traveling public of danger or ameliorate that danger.'" (*Id.*, at p. 224, italics omitted.)

The *Blair* court vacated the superior court's ruling. It held that plaintiff was not limited to proving failure to prevent or remedy the accumulation of ice on the highway: "We do not read the claim so narrowly nor do we think the law requires that the claim contain the degree of specificity defendant would have us enforce." (*Blair* v. *Superior Court, supra,* 218 Cal.App.3d p. 224.) *Blair* noted that the claim statutes required only " '[t]he date, place and other circumstances of the occurrence or transaction,' " a " 'general description of the . . . injury, damage or loss incurred,' " and " '[t]he name or names of the public employee or employees causing the injury . . . if known.' " (At p. 224.) The court concluded that any variance between the claim and the complaint did not approach that present in the *Connelly/Nelson/Fall River* line of cases. (*Blair, supra,* at pp. 225-226.) "[I]n each of [these] decisions the plaintiff did not merely elaborate or add further detail to a claim which was predicated on the same fundamental facts set forth in the complaint. Rather, there was a complete shift in allegations, usually involving an effort to premise civil liability on acts or omissions committed at different times or by different persons than those described in the claim." (*Blair* v. *Superior Court, supra,* 218 Cal.App.3d at p. 226.)

Our case is closer to *Smith* and *Blair* than to the earlier decisions in the *Connelly/Nelson/Fall River* line of cases. Both plaintiff's complaint and her claim were predicated on the same fundamental facts—Officer Sanford's alleged mistreatment of plaintiff. The causes of action for negligent hiring, training, and retention and for failure to train, supervise, and discipline merely sought to show direct responsibility of San Francisco for Officer Sanford's conduct. Plaintiff did not shift the fundamental facts about her injury. We realize that *Fall River* and this case are superficially similar in that both plaintiffs sought to add allegations of negligent supervision. But in *Fall River* the written claim blamed only the door, not the poorly supervised students, who were not even mentioned. Here, both the written claim and the lawsuit identified the police officer as the principal actor.

We conclude that the court erred in summarily adjudicating two causes of action against plaintiff. We issue a peremptory writ of mandate in the first instance (Code Civ. Proc., § 1088; *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177-180 [203 Cal.Rptr. 626, 681 P.2d 893]).

Let a peremptory writ of mandate issue directing the San Francisco Superior Court to vacate its ruling granting summary adjudication.

Strankman, J., and Chin, J., concurred.

The petition of real parties in interest for review by the Supreme Court was denied February 20, 1991. Panelli, J., was of the opinion that the petition should be granted.