Filed 6/30/14  Gonzalez v. Carrera Construction CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| FRANCISCO D. GONZALEZ et al., | F065339 |
| Plaintiffs and Appellants, | (Super. Ct. No. 614551) |
| v. | |
| CARRERA CONSTRUCTION et al., | **OPINION** |
| Defendants and Respondents. | |
| FRANCISCO GONZALEZ et al., | F065968 |
| Plaintiffs and Respondents, | (Super. Ct. No. 614551) |
| v. | |
| CITY OF RIVERBANK, | Stanislaus County |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Stanislaus County.  Roger M. Beauchesne, Judge.

Law Offices of Mina L. Ramirez, Mina L. Ramirez, Noah Kanter and Kevin M. Massoni for Plaintiffs, Appellants and Respondents Francisco D. Gonzalez, Herlinda Martinez and Jesus Francisco Gonzalez.

Borton Petrini and John J. Hollenback, Jr. for Defendant, Respondent and Appellant City of Riverbank.

Law Offices of Brian C. Davis and Brian C. Davis for Defendants and Respondents Carrera Construction, Inc., Larry Carrera and Claudia Coria-Carrera.

-ooOoo-

These consolidated appeals follow a jury trial on the complaint filed by appellants and respondents, Herlinda Martinez and Francisco Gonzalez. Martinez and Gonzalez alleged that their home flooded due to the acts and omissions of respondents, Carrera Construction, Hilario Carrera and Claudia Coria-Carrera, the builders and sellers of the single family residence, and appellant, City of Riverbank (City).

Before the case was submitted to the jury, the trial court granted the Carreras' motion for nonsuit on the fraud and conspiracy causes of action. Thereafter, the jury found in favor of Martinez and Gonzalez on their cause of action for negligence against the Carreras and on their cause of action for creating and maintaining a dangerous condition of public property against the City.

In posttrial rulings, the trial court granted the Carreras' motion for judgment notwithstanding the verdict (JNOV) on the negligence cause of action and awarded the Carreras attorney fees as the prevailing parties. The trial court granted the City's motion for new trial in part and reduced the verdict on the economic damages. However, the trial court denied the City's motion for new trial on the noneconomic damages and the City's motion for JNOV.

Martinez and Gonzalez contend the trial court erred in granting both the nonsuit and the JNOV motions made by the Carreras. Contrary to Martinez and Gonzalez's position, nonsuit was properly granted on the fraud and conspiracy causes of action.

2.

There was no evidence to support these claims. However, the trial court erred in granting JNOV on the negligence cause of action. Substantial evidence supports the jury's finding that the Carreras were negligent in the design and construction of the home. Therefore, the orders granting JNOV on the negligence claim against the Carreras and awarding the Carreras attorney fees as the prevailing parties will be reversed.

The City argues that the judgment against it must be reversed because the majority of the evidence presented by Martinez and Gonzalez at trial focused on a theory that was not part of the pre-litigation claim. At trial, the expert witness designated by Martinez and Gonzalez testified that the City was negligent when it failed to properly maintain the storm drains. However, the pre-litigation claim filed by Martinez and Gonzalez alleged the City was negligent when it approved the construction of the streets, subdivision and residence without providing for proper leveling and/or drainage. According to the City, Martinez and Gonzalez were limited to the liability theory presented in the pre-litigation claim. Thus, the trial court prejudicially erred in admitting the evidence on the City's alleged negligent maintenance of the storm drains and its emergency response. The City is correct. Therefore, the judgment against the City will be reversed.

## BACKGROUND

In 2004, Martinez and Gonzalez entered into a contract with the Carreras to purchase a lot and have a residence constructed at 3518 Virginia Avenue, Riverbank. Shortly after moving in, Martinez and Gonzalez discovered that the street and sidewalks in front of their house tended to flood when it rained.

On April 14, 2006, a series of very intense rain cells moved through the Riverbank area. In a two-hour period starting at around noon, 2.19 inches of rain fell in Riverbank, with 1.57 inches falling between 1:00 and 2:00 p.m. Water began accumulating in the street in front of Martinez and Gonzalez's house. Within a short time the water level was high enough that the driveway, garage and yard were flooded and water was entering the

3.

house.  The water inside the house reached a depth of between one and two inches and affected every room.

Martinez attempted to reduce the flooding with sandbags.  While carrying a sandbag, Martinez slipped on a wet floor.  She suffered bruises from the fall but was completely healed in two weeks.

Carpets, baseboards and drywall in the affected areas of the house had to be replaced.  The cost of these repairs totaled $2,681.

In October 2006, Gonzalez, Martinez, and their six-year old son, Jesus, each filed a claim against the City.  These claims alleged

> "The City of Riverbank and its agents and employees, Jose Lopez, Henry Meyer, and others whose identities/names are unknown to Claimant at this time, were negligent in that they approved construction of streets, subdivision, and the residence/house at 3518 Virginia Avenue, in Riverbank, California.  Said construction and/or subdivision planning/design did not provide proper leveling and/or drainage.  As a result, Claimant's house and contents have suffered flood damage due to rain."

These claims alleged further damages based on Martinez's fall and the exposure to potential mold.  The City rejected the claims.

Following this rejection, Martinez and Gonzalez filed suit against the City and the Carreras.  The fifth amended complaint alleged that the Carreras were negligent in failing to design and construct the house to protect it from the repeated flooding in the area.  The complaint further alleged that the Carreras knew or should have known of the prior flooding, inadequate drainage, and improper grading and that they intentionally and negligently concealed these facts.  The complaint also charged the Carreras with fraud, conspiracy, breach of contract and violation of the covenant of good faith and fair dealing.  Martinez and Gonzalez alleged that the City created a dangerous condition of public property and allowed that condition to exist.

4.

To prove their claims against the City, Martinez and Gonzalez designated John Squier, a civil engineer specializing in road maintenance, as their expert. When his deposition was taken before trial, Squier opined that the City had been negligent in maintaining the storm drains and did not adequately deploy its emergency response personnel during the 2006 storm. Based on this deposition, the City moved in limine to exclude Squier's testimony on the ground that his opinions did not relate to the allegations of negligent design and plan approval in the pre-litigation claims. In response, counsel for Martinez and Gonzalez argued that the City had received adequate notice through the complaint. The trial court denied the motion.

At trial, Squier testified as to the opinions he formed regarding the City's maintenance of its storm drains in 2006. He found that there was no evidence of annual cleaning procedures or appropriate inspections. Squier noted that the City neither kept records nor had a system for maintaining records. Squier further opined that the City should have known of this flooding problem and taken a "proactive approach during the storm event." In other words, the City should have dispatched people to the problem area to make sure the drain was functioning properly because "when you know about areas that cause problems, that should be your first order of business." Instead, the City was reactive and "just sent people out" who drove around and looked for plugged areas. According to Squier, if City personnel see they are going to have a backup and the drain is clear, they should "get some type of pumping device out there to pump the water out" of the drain. Squier concluded that the City's practices with respect to drainage maintenance did not "meet the standard of care that you would expect of a [c]ity or a [c]ounty." However, Squier had no opinion on the design of the storm drain on Virginia Avenue.

To prove their claims against the Carreras, Martinez and Gonzalez relied on testimony from several witnesses, expert and lay, including Hilario Carrera, who Martinez and Gonzalez called under Evidence Code section 776.

5.

Martinez and Gonzalez testified that no one told them there had been flooding incidents before they purchased the home and lot. After the first time the street and part of the property flooded in 2004, Martinez spoke with Hilario Carrera. Carrera told Martinez to speak with City personnel because it was a drainage issue.

Hilario Carrera testified that he builds houses that comply with the building code. According to Carrera, the foundation of the house at 3518 Virginia Avenue met the code requirements. Carrera denied knowing or being told by anyone about the flooding problems and claimed that he could not tell by looking whether the general area had previously flooded. Although Carrera stated that, as a builder, he has no duty to investigate the property before construction, he testified that if he had known of the flooding, he would have raised the foundation. Carrera also acknowledged that the code sets the minimum foundation height requirements.

Various neighbors of Martinez and Gonzalez testified regarding the repeated flooding problems. One neighbor, Kimberly Jaspar, lives in a house across the street. Jaspar testified that she talked to the builder of Martinez and Gonzalez's home and anyone else who was out there and "voiced [her] concerns" about the lot flooding. Another neighbor, Greg Sedain, a carpenter, moved across the street from 3815 Virginia Avenue in the early 1990s, and experienced flooding shortly thereafter. Because of the low grade of his lot, he elevated his house. According to Sedain, the higher elevation of his house was noticeable from across the street. Sedain also stated that, when Martinez and Gonzalez's house was being built, it looked like the foundation was too low when compared to the street.

Martinez and Gonzalez presented expert testimony from Richard Paddock, a certified home appraiser. Paddock investigated the house and took measurements, including the slope of the lot. Paddock testified that, while the concrete patios, driveway and walkways sloped away from the structure for 10 feet, the slope behind the house was such that there was a one-and-a-half foot drop from the rear of the lot to the house.

6.

According to Paddock, if water was released at the upper end of the slope in sufficient quantity, the water would run through the house. Therefore, Paddock opined, the house should have been built up. Paddock explained that he was not an engineer but that the slope problem was obvious enough to raise a concern.

The Carreras moved for nonsuit. Regarding the negligence causes of action, the Carreras asserted that Martinez and Gonzalez had failed to put on any expert testimony indicating that there had been a breach of the duty of care.

The trial court granted nonsuit as to the causes of action for fraud/intentional misrepresentation and conspiracy to defraud. The court found there was "not even a scintilla of evidence to indicate that there was fraud involved." The court concluded there might have been negligent failure to disclose but not fraud. However, the court denied the Carreras' nonsuit motion on the remaining causes of action.

The jury found in favor of Martinez and Gonzalez on the negligence claims against the Carreras. The jury awarded Martinez $681 for past economic loss, $30,000 for past noneconomic loss, and $10,000 for future noneconomic loss, for a total of $40,681. The jury awarded Gonzalez $2,000 for past economic loss, $12,000 for past noneconomic loss, and $5,000 for future noneconomic loss, for a total of $19,000.

On the dangerous condition of public property claim against the City, the jury found in favor of Martinez and Gonzalez. The jury awarded Martinez $48,000 for past economic loss and $100,000 for past noneconomic loss, including physical pain and mental suffering. The jury awarded Gonzalez $48,000 for past economic loss.

The Carreras moved for JNOV on the negligence claims. The trial court granted the motion. Thereafter, the Carreras moved for attorney fees as the prevailing parties. The trial court granted the Carreras' request for attorney fees and awarded them $47,135.

The City moved for a new trial and for JNOV. The City based its posttrial motions on the grounds of jury misconduct, excessive damages, and the admission of Squier's testimony on matters not mentioned in the pre-litigation claims. The trial court

7.

ordered a new trial on the issue of economic damages unless Martinez and Gonzalez accepted a remittitur of the $96,000 award to $2,681. The trial court denied the remainder of the motion for new trial and the motion for JNOV. Interpreting the pre-litigation claim under a standard of "'utmost liberality,'" the trial court concluded that it was reasonably related to the allegations against the City in the complaint and fairly put the City on notice of the claims.

## DISCUSSION

**1.** ***Martinez and Gonzalez's appeal.***

Martinez and Gonzalez contend the trial court erred in granting the Carreras' JNOV motion, thereby negating the jury's negligence verdict, and in granting nonsuit on the causes of action for intentional misrepresentation/fraud and conspiracy to defraud. Martinez and Gonzalez further assert the Carreras were not entitled to attorney fees under either the contract or any other provision of law.

### a. Standard of review.

The trial court may grant a motion for JNOV only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that the verdict is not supported by substantial evidence. (*Sweatman v. Department of Veterans Affairs* (2001) 25 Cal.4th 62, 68.) Accordingly, the trial court may not weigh evidence, draw inferences contrary to the verdict, or assess the credibility of witnesses. (*Bengal v. Canfield & Associates, Inc.* (2000) 78 Cal.App.4th 66, 72.) On review, this court may uphold the order granting JNOV only if, reviewing the evidence in the light most favorable to Martinez and Gonzalez, resolving all conflicts and drawing all inferences in their favor, and deferring to the implicit credibility determinations of the trier of fact, there was no substantial evidence to support the jury's verdict in their favor. (*Ibid.*)

Similarly, a defendant is entitled to a nonsuit "when, disregarding conflicting evidence, giving plaintiff's evidence all the value to which it is legally entitled, and indulging in every legitimate inference that may be drawn from the evidence, the trial

8.

court determines that there is no sufficiently substantial evidence to support a verdict in plaintiff's favor." (*County of Kern v. Sparks* (2007) 149 Cal.App.4th 11, 16.) As with an order granting JNOV, on appeal from the granting of a nonsuit the reviewing court must resolve every conflict in the testimony in favor of the plaintiff and indulge in every presumption and inference that could reasonably support the plaintiff's case. (*Ibid.*)

### b. The trial court erred in granting JNOV on the negligence cause of action.

The Carreras moved for JNOV on the negligence cause of action on the ground that there was no expert witness testimony supporting a finding that the construction of Martinez and Gonzalez's house fell below the standard of care. According to the Carreras, the construction complied with building code requirements for foundation elevation and was according to plans and specifications that had been approved by the City.

Martinez and Gonzalez's negligence cause of action was based on their claim that the Carreras either knew or should have known of the property's inadequate drainage, the prior flooding and the prospective probability of flooding and that they failed to design and construct the house to protect it against the probable flooding. According to Martinez and Gonzalez, a reasonably careful contractor would have raised the foundation.

The jury was instructed that a contractor is negligent if he or she fails to use the level of skill and care that a reasonably careful contractor would use in similar circumstances, i.e., the contractor's acts fall below the standard of care. The jury was further told that it must determine this applicable level of skill and care based only on expert witness testimony. Based on this instruction and the evidence, the jury found the Carreras were negligent and that this negligence was a substantial factor in causing harm to Martinez and Gonzalez.

Contrary to the trial court's ruling, viewing the evidence in the light most favorable to Martinez and Gonzalez, resolving all conflicts and drawing all inferences in

their favor, and deferring to the jury's implicit credibility determinations, substantial evidence supports the verdict.

Although Hilario Carrera testified he did not know about the flooding problems and could not tell by looking whether the area had previously flooded, conflicting evidence was also presented. Martinez and Gonzalez's neighbor, Kimberly Jaspar, testified that during the construction of the house she told the builders about the lot flooding. Neighbor Greg Sedain stated that he elevated his house because of flooding and that this higher elevation was noticeable from across the street. Sedain also thought that when Martinez and Gonzalez's house was being built the foundation looked low when compared to the street. Further, Martinez and Gonzalez's expert, Paddock, testified that there was a problem with the slope at the rear of the lot. Although Paddock is not an engineer, he concluded that the slope problem was obvious enough to at least raise a concern. From this evidence, the jury could reasonably infer that Hilario Carrera either knew or should have known about the flooding problems.

Hilario Carrera, testifying as an expert, gave his opinion regarding what a contractor should do under these circumstances. He stated that if he had known of the flooding, he would have raised the foundation. Carrera also acknowledged that the code sets the *minimum* foundation height requirements. This opinion, along with the jury's implicit finding that Carrera knew or should have known of the flooding problem, support the jury's finding that the Carreras were negligent. Resolving all conflicts and drawing all inferences in Martinez and Gonzalez's favor, and deferring to the jury's implicit credibility determinations, there was substantial evidence to support the jury's verdict on the negligence cause of action. Accordingly, the trial court erred in granting JNOV.

### c. Nonsuit was properly granted on the fraud and conspiracy causes of action.

The elements of fraud that will give rise to a cause of action are: false representation, concealment or nondisclosure; knowledge of falsity; intent to defraud, i.e.,

to induce reliance; justifiable reliance; and resulting damage. (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 974.) Fraud is an intentional tort. It is the element of fraudulent intent, or intent to deceive, that distinguishes fraud from actionable negligent misrepresentation. (*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th 445, 482.)

Fraudulent intent is a question of fact and must often be established by circumstantial evidence. (*Locke v. Warner Bros., Inc.* (1997) 57 Cal.App.4th 354, 368.) Nevertheless, here, there was no evidence that the Carreras intended to deceive Martinez and Gonzalez. Martinez and Gonzalez contend that they should have been able to argue to the jury that the Carreras intended to deceive them but they do not point to any evidence to support such an argument.

In any event, Martinez and Gonzalez were not prejudiced by the fraud claim being taken away from the jury. In finding for the Carreras on Martinez and Gonzalez's claim for concealment, the jury found that "defendants Carrera Construction" did not intend to deceive Martinez and Gonzalez by failing to disclose an important fact. It is thus reasonable to conclude that the jury would have found no intent to deceive on the fraud claim as well.

Martinez and Gonzalez note that the finding on intent to deceive was limited to Carrera Construction. It is most likely that the omission of Hilario and Claudia Carrera on the special verdict form was an error. Nevertheless, the finding that Carrera Construction did not intend to deceive Martinez and Gonzalez applies to Hilario and Claudia Carrera as well. As the jury was instructed, the legal relationship between respondents was such that if Hilario and Claudia Carrera were acting within the scope of their employment, their actions were imputed to Carrera Construction. Accordingly, if Carrera Construction did not intend to deceive Martinez and Gonzalez, Hilario and Claudia Carrera did not intend to deceive Martinez and Gonzalez.

11.

Similarly, nonsuit was properly granted on the conspiracy to commit fraud claim. Civil conspiracy requires the jury to find that two or more persons agreed to perform a wrongful act. (*Wyatt v. Union Mortgage Co.* (1979) 24 Cal.3d 773, 784.) In addition to the formation of the conspiracy, the wrongful act must occur resulting in damages. (*Mosier v. Southern Cal. Physicians Ins. Exchange* (1998) 63 Cal.App.4th 1022, 1048.) Because Martinez and Gonzalez failed to present sufficient evidence of the underlying fraud claim, their conspiracy to commit fraud claim falls as well.

### d. The award of attorney fees to the Carreras must be reversed.

The trial court awarded the Carreras attorney fees as the prevailing parties under the purchase agreement entered into between Martinez and Gonzalez and the Carreras. This agreement provides "In any action, proceeding or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller may be entitled to reasonable attorney fees and costs .…"

It is well established that an attorney fee provision such as this permits recovery of fees incurred in prosecuting or defending tort claims that arise out of the agreement. The provision is phrased broadly enough to support an award of attorney fees to the prevailing party in an action alleging both contract and tort claims. (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 608.)

Here, both the tort and the breach of contract claims arose out of the purchase agreement. Martinez and Gonzalez alleged that the Carreras breached the purchase agreement by failing to disclose that the property would flood and by failing to properly design and construct and grade the property. The negligence claim was based on the same failure to disclose and to properly design and construct and grade the property. Accordingly, with the reversal of the grant of JNOV on the negligence claim, the Carreras are no longer the prevailing parties under the agreement. Therefore, the attorney fee award must be reversed.

**2.** *The City's appeal.*

The City contends the trial court prejudicially erred when it permitted Martinez and Gonzalez's expert, John Squier, to testify that the City had been negligent in maintaining the storm drains and in not adequately deploying its emergency response personnel during the 2006 storm. According to the City, this evidence was inadmissible because these opinions were based on facts that were not set forth in the written claims filed by Martinez and Gonzalez.

Before suing a public entity, a plaintiff must submit a timely written claim for damages to that entity. (*Shirk v. Vista Unified School Dist.* (2007) 42 Cal.4th 201, 208.) This is not merely a procedural requirement but, rather, is a condition precedent to maintaining the action. (*Id*. at p. 209.)

Government Code section 910 sets forth the required contents of a claim. These requirements include showing "[t]he date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted." (Gov. Code, § 910, subd. (c).)

The purpose of requiring a claim is "'to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation.'" (*Stockett v. Association of Cal. Water Agencies Joint Powers Ins. Authority* (2004) 34 Cal.4th 441, 446 (*Stockett*).) Accordingly, while a claim need not contain the detail and specificity required of a pleading, it nevertheless must "fairly describe what that entity is alleged to have done." (*Shoemaker v. Myers* (1992) 2 Cal.App.4th 1407, 1426.) "A theory of recovery not included in the claim may not thereafter be maintained." (*Ibid*.) The factual basis for recovery in the complaint must be fairly reflected in the written claim. (*Turner v. State of California* (1991) 232 Cal.App.3d 883, 888 (*Turner*).) Where there is a complete shift in allegations, such as an effort to premise civil liability on acts or omissions committed at different times or by

13.

different persons than those described in the claim, the cause of action fails.  (*Blair v. Superior Court* (1990) 218 Cal.App.3d 221, 226 (*Blair*).)

Opinions addressing the discrepancies between the contents of the tort claim and the allegations in the complaint in various contexts fall into one of two lines of cases.  A number of cases have barred claims that assert theories of liability based on facts that are not fairly reflected in the written claim.  Other cases have allowed causes of action that vary from the claim so long as the complaint is predicated on the same fundamental facts as those in the claim.  The latter cases include *Smith v. County of Los Angeles* (1989) 214 Cal.App.3d 266 (*Smith*); *White v. Superior Court* (1990) 225 Cal.App.3d 1505 (*White*); *Blair, supra,* 218 Cal.App.3d 221; and *Stockett, supra*, 34 Cal.4th 441.

In *Smith*, the plaintiff homeowners filed tort claims against Los Angeles County alleging that the County had "'cut into the hill'" to construct a road and that this cut had created a landslide danger by removing support.  (*Smith, supra,* 214 Cal.App.3d at p. 273.)  In their complaint, the plaintiffs further alleged that, in removing the stabilizing slide debris from the roadway and in permitting further construction of homes, the County reactivated the landslide.  (*Id*. at p. 274.)

The *Smith* court held that these additional allegations were not based on facts entirely different from those in the tort claims but, rather, were fairly reflected in the claims.  The claims alleged that the construction of the road caused the landslide that destroyed the plaintiffs' homes.  The court concluded that the assertions at trial regarding the clearing of slide debris from the roadway and the presence of water runoff over the roadway were matters closely connected with the construction of the road.  (*Smith, supra,* 214 Cal.App.3d at p. 280.)

Similarly in *White*, the court found the complaint was "predicated on the same fundamental facts" as the tort claim.  (*White, supra,* 225 Cal.App.3d at p. 1511.)  There, the plaintiff filed a claim with a city stating a police officer had falsely arrested her and beaten her.  The plaintiff's complaint included causes of action for negligent hiring,

14.

training and retention and intentional failure to train, supervise, and discipline. (*Id*. at p. 1507.) The court rejected the city's argument that these causes of action were not fairly reflected in the claim finding that both the claim and the complaint were based on the same fundamental facts, i.e., the officer's alleged mistreatment of the plaintiff. (*Id*. at p. 1511.)

The court in *Blair* reached a like conclusion. In *Blair*, the claim alleged the plaintiff was injured when the pickup he was riding in went out of control on an icy road that the defendant had negligently constructed and had failed to maintain and sand. (*Blair, supra,* 218 Cal.App.3d at p. 223.) The complaint included allegations relating to the lack of guard rails and warning signs and the slope of the road. (*Id*. at p. 224.) The court concluded the claim was sufficient to support the complaint because both were "premised on essentially the same foundation, that because of its negligent construction or maintenance, the highway at the scene of the accident constituted a dangerous condition of public property." (*Id*. at p. 226.)

In *Stockett*, the California Supreme Court considered whether a wrongful termination claim supported the subsequent complaint. The plaintiff's claim alleged he was wrongfully terminated by a public agency for supporting another employee's sexual harassment complaints. The claim identified the instigator of the termination and stated the date on which the termination occurred. The complaint alleged the plaintiff had been terminated in violation of public policy on three specific grounds, including opposing sexual harassment in the workplace. (*Stockett, supra,* 34 Cal.4th at p. 444.)

The *Stockett* court concluded the claim adequately informed the agency of the nature of the claim. The court explained "A complaint's fuller exposition of the factual basis beyond that given in the claim is not fatal, so long as the complaint is not based on an 'entirely different set of facts.' [Citation.] Only where there has been a 'complete shift in allegations, usually involving an effort to premise civil liability on acts or omissions committed at different times or by different persons than those described in the

15.

claim' have courts generally found the complaint barred." (*Stockett, supra,* 34 Cal.4th at p. 447.) Stockett's additional theories were based on the same fundamental facts set forth in the claim and thus provided sufficient information for the public agency to conduct an investigation into the merits of the wrongful termination claim. (*Id.* at p. 450.)

In contrast, where the complaint alleges liability on an entirely different factual basis than the claim, courts have consistently held the action is barred. For example, in *Fall River Joint Unified School Dist. v. Superior Court* (1988) 206 Cal.App.3d 431 (*Fall River*), the plaintiff was injured at school when a steel door struck his head. Plaintiff's tort claim stated the injury was caused by the school's negligent maintenance of the school premises. However, the complaint additionally alleged that school personnel negligently failed to supervise students who were engaged in "'dangerous horse-play.'" (*Id.* at p. 434.) The court held that this additional cause of action was barred because the factual divergence between the claim and the complaint was too great. Despite the causes of action having arisen at the same time, the plaintiff was nevertheless attempting to premise liability upon a set of facts that was entirely different from those set forth in the tort claim. (*Id.* at p. 435.)

Similarly, in *Donohue v. State of California* (1986) 178 Cal.App.3d 795 (*Donohue*), the court held the factual basis for recovery alleged in the complaint was not reflected in the plaintiff's tort claim where the claim asserted the Department of Motor Vehicles negligently allowed an uninsured motorist to take a driving test and the complaint alleged that the department negligently supervised and instructed the driver during the exam. (*Id.* at p. 804.) And in *Turner*, the plaintiff, who was shot in a state owned parking lot, was barred from alleging a cause of action based on a claim of inadequate lighting when the tort claim was based solely upon a failure to provide adequate security. (*Turner, supra,* 232 Cal.App.3d at pp. 887-888, 891.)

The situation here is analogous to the *Fall River/Donohue/Turner* line of cases. The tort claim alleged that the City was negligent in that it "approved construction of

16.

streets, subdivision, and the residence/house at 3518 Virginia Avenue, in Riverbank, California. Said construction and/or subdivision planning/design did not provide proper leveling and/or drainage." This allegedly negligent approval of a construction plan that did not provide for proper leveling and drainage concerned acts that occurred no later than when the home was built in 2004. In fact, the subdivision planning, street construction and storm drain design at issue took place many years before. However, to prove their claims against the City at trial, Martinez and Gonzalez relied on Squier's expert testimony regarding the City's later acts of negligently *maintaining* the storm drains and inadequately responding to the April 2006 storm event. Squier had no opinion on the design of the storm drains.

Negligence based on storm drain maintenance and emergency flood response is a complete shift from the allegations in the tort claim. The omissions testified to by Squier, i.e., that the City failed to keep storm drain maintenance records and to proactively respond to the storm on April 14, 2006, were committed at different times from the acts of construction, planning, design and approval set forth in the claim. Squier's testimony does not merely elaborate or add further detail to the allegations that the City negligently planned, designed, approved and constructed a subdivision and storm drain system in and before 2004. His testimony presents a separate theory of liability. Approval of the design and construction of the storm drain system and the house on or before 2004 is not synonymous with maintaining that storm drain system and responding to a flood in 2006. Thus, Squier's testimony and the tort claim were not predicated on the same fundamental facts. Accordingly, the trial court erred in admitting this evidence.

Martinez and Gonzalez assert that "a huge swath of evidence" was presented that proved the City showed a lack of due care in evaluating the planning and approval of the Virginia Street storm drain system. Therefore, Martinez and Gonzalez argue, the verdict is supported by substantial evidence.

17.

However, through Squier's testimony, Martinez and Gonzalez asserted additional theories of recovery, i.e., that the City negligently maintained the storm drains and that the City inadequately responded to the storm event. Each theory of recovery must have been reflected in a timely tort claim. (*Hata v. Los Angeles County Harbor/UCLA Medical Center* (1995) 31 Cal.App.4th 1791, 1808.) Thus, proof of one theory at trial will not cure defects in the claim.

Martinez and Gonzalez further contend that the City was not prejudiced by the alleged shortcomings of their tort claims because the City learned of the negligent maintenance theory when Martinez and Gonzalez filed their complaint. Nevertheless, the claims statutes must be satisfied even in the face of the public entity's actual knowledge of the circumstances surrounding the claim. "'[T]he purpose of the claims statutes is not to prevent surprise, but "to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation."'" (*DiCampli-Mintz v. County of Santa Clara* (2012) 55 Cal.4th 983, 991.)

Although Squier's opinions that the City negligently maintained the storm drains and inadequately responded to the April 2006 storm were improperly admitted, such errors do not require reversal unless they were prejudicial. "[T]rial error is usually deemed harmless in California unless there is a 'reasonabl[e] probab[ility]' that it affected the verdict." (*College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 715.) "'[P]robability' in this context does not mean more likely than not, but merely *a reasonable chance*, more than an *abstract possibility*." (*Ibid.*)

Here, Martinez and Gonzalez relied primarily on Squier's testimony to prove the City was negligent. This testimony focused almost exclusively on the alleged negligent maintenance of the storm drains and the City's response to the storm. In fact, Squier specifically stated that he had no opinion on the design of the storm drain on Virginia Avenue. Under these circumstances, it must be concluded there is a *reasonable chance*

that Squier's testimony affected the verdict in favor of Martinez and Gonzalez and against the City. Accordingly, that verdict must be reversed.

## DISPOSITION

The order granting the Carreras' motion for judgment notwithstanding the verdict on the negligence cause of action is reversed and the verdict is reinstated. The order awarding the Carreras attorney fees is reversed. The verdict in favor of Martinez and Gonzalez on their cause of action for creating and maintaining a dangerous condition of public property against the City is reversed. In all other respects, the judgment is affirmed. The City is awarded its costs on appeal. Martinez and Gonzalez and the Carreras shall bear their own costs on appeal.

_____
LEVY, Acting P.J.

WE CONCUR:


_____
DETJEN, J.


_____
PEÑA, J.

19.