Filed 11/4/20  P. v. Alvarado CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ESTUARDO ALVARADO,<br><br>    Defendant and Appellant. | B297688<br><br>(Los Angeles County<br>Super. Ct. No. PA088215) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  David W. Stuart, Judge.  Affirmed.

Nancy J. King, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Michael C. Keller and Charles J. Sarosy, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

Estuardo Alvarado appeals from a judgment which sentences him to state prison for second degree murder, gross vehicular manslaughter, driving under the influence (DUI), and hit and run driving. We affirm the judgment.

**FACTS**

On February 19, 2017, at approximately 2:40 p.m., Alvarado rear ended Shirley Greenberg's Honda Civic with his Dodge Durango. The collision caused the trunk of the Civic to be pushed into the frame of the rear window, and the Civic was "totaled." Mildred Friedmann and Sandra Page were passengers in Greenberg's car. Alvarado and Greenberg pulled over and they spoke briefly about exchanging information. When Greenberg turned to her car to retrieve her insurance information, Alvarado fled in his Durango.

Driving in excess of 60 miles per hour in a 40-mile-per-hour zone, Alvarado ran a red light and hit the side of Sandra Duran's Toyota Camry. He came to a stop only when he went over a median divider and hit a parked car. The second collision occurred minutes after the first. Duran's son, Christian Galvan, and his girlfriend, Stephanie Garcia, were passengers in the Camry.

Two officers from the Los Angeles Police Department were on foot patrol nearby and heard the crash. They pulled Galvan and Garcia from Duran's car but could not open the driver-side door to retrieve Duran, who was not responsive and bleeding from her nose. Officers also pulled Alvarado, who was unconscious, from the smoking Durango.

Duran died at the scene of the collision from multiple blunt force injuries. Garcia was hospitalized for seven to 10 days for back pain and internal bleeding in her left kidney. Alvarado was

2

also taken to the hospital, where he did not cooperate and gave a false name to the officers. Officers observed he had red watery eyes, a blank stare, and smelled of alcohol. Blood samples were taken from Alvarado at 4:05 p.m. and 8:42 p.m. The first blood sample revealed a blood alcohol content of 0.31 percent and the second sample showed a blood alcohol content of 0.18 percent, both above the legal limit. After his arrest, Alvarado admitted in recorded jailhouse calls that he was intoxicated and his girlfriend had warned him repeatedly about the consequences of driving drunk.

Alvarado was charged with second degree murder (Pen. Code, § 187, subd. (a); count 1), gross vehicular manslaughter while intoxicated (Pen. Code, § 191.5, subd. (a); count 2), driving under the influence causing injury (Veh. Code, § 23153, subd. (a); count 3), driving with over a 0.08 percent blood alcohol content causing injury (Veh. Code, § 23153, subd. (b); count 4), and hit and run driving resulting in injury (Veh. Code, § 20001, subd. (b)(1); count 5). As to count 2, it was alleged Alvarado had three prior convictions for driving with over a 0.08 percent blood alcohol content. As to counts 3 and 4, it was further alleged Alvarado personally inflicted great bodily injury. (Pen. Code, § 12022.7, subd. (a).)

A jury found Alvarado guilty of counts 2 through 5 but were unable to reach a verdict on count 1. The trial court declared a mistrial as to that count and allowed the People to retry it. In the second trial, the jury found Alvarado guilty of second degree murder as alleged in count 1. In a bifurcated trial, the court found true the allegation that Alvarado suffered three prior convictions for driving with over a 0.08 percent blood alcohol content.

Alvarado was sentenced to an indeterminate term of 15 years to life plus a determinate term of six years eight months as follows: as to count 1, 15 years to life; as to count 3, a consecutive term of three years plus three years for the great bodily injury enhancement; and as to count 5, a consecutive term of eight months. The sentences for count 2 and count 4 were stayed pursuant to Penal Code section 654.

Alvarado appealed.

## DISCUSSION

Alvarado contends his conviction for gross vehicular manslaughter in the first trial precluded the second prosecution for murder under double jeopardy principles and Penal Code section 1023. He also contends there was insufficient evidence to support a conviction for hit and run resulting in injury because there was no evidence of an injury resulting from his collision with Greenberg's car. Finally, he argues the trial court abused its discretion to admit video of the aftermath of Alvarado's collision with Duran taken from a responding officer's body camera. None of these arguments require reversal.

## I. Neither Double Jeopardy Principles Nor Penal Code Section 1023 Precluded The Second Trial

Alvarado contends his second trial was precluded under double jeopardy principles and Penal Code section 1023.[1]

---

[1] Alvarado relied on *People v. Rivera* (May 30, 1995, H012473) [nonpub. opn.], which appeared to be dispositive of the issue. However, *Rivera* was depublished when the California Supreme Court granted review on August 31, 1995 in S047569. It remained unpublished after the Supreme Court dismissed its grant of review and remanded the matter to the appellate court on July 11, 1996. As a result, it may not be cited. (Cal. Rules of

A defendant "may not twice be put in jeopardy for the same offense." (Cal. Const., art. I, § 15; U.S. Const., 5th Amend.) The "underlying idea" of the double jeopardy rule "is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." (*Green v. United States* (1957) 355 U.S. 184, 187–188.)

Penal Code section 1023 similarly provides: "When the defendant is convicted or acquitted or has been once placed in jeopardy upon an accusatory pleading, the conviction, acquittal, or jeopardy is a bar to another prosecution for the offense charged in such accusatory pleading, or for an attempt to commit the same, or for an offense necessarily included therein, of which he might have been convicted under that accusatory pleading."

We follow the Supreme Court's analysis in *People v. Hicks* (2017) 4 Cal.5th 203 (*Hicks*) to reject Alvarado's argument. *Hicks* presents identical facts to this case. There, the defendant was retried for second degree murder after a previous jury had failed to reach a verdict on that charge but convicted him of gross vehicular manslaughter while intoxicated, along with other offenses. (*Id.* at p. 205.) The *Hicks* court decided whether a subsequent jury should be informed of a defendant's specific

Court, rule 8.1115(a); Cal. Style Manual (4th ed. 2000) § 1:26, pp. 26–27.) Alvarado's appellate counsel was unaware of *Rivera's* unpublished status due to an error on Lexis Nexis, which has been corrected.

5

convictions resulting from a previous trial when the first jury fails to reach a verdict. (*Id*. at p. 205.) In holding that a trial court errs if it informs the new jury of prior specific convictions but providing a different instruction to be given, the *Hicks* court observed:

"In this case, if the first jury had convicted defendant of an offense that was necessarily included within the charge of murder, instead of a lesser related offense to murder, retrial of the murder charge would have been barred. Although a jury's inability to reach a verdict is a well-established exception to the double jeopardy bar [citation], and although there is no implied acquittal when a deadlocked jury convicts on a necessarily included offense [citation], retrial of a greater offense after a defendant has been convicted of a necessarily included offense would be tantamount to trying the defendant on the necessarily included offense twice, and a conviction on the greater offense under such circumstances would be tantamount to convicting the defendant on the necessarily included offense twice. Therefore, we held in [*People v.*] *Fields* [(1996) 13 Cal.4th 289, 310–311] that if a jury fails to reach a verdict on a charged offense but convicts on a necessarily included offense, and if the conviction is recorded by the court and the jury is discharged, retrial of the greater offense is barred under Penal Code section 1023. [Citations.]

"Here, however, retrial of the murder charge was permitted because the first jury, unable to agree as to the murder charge, convicted defendant of *lesser related* offenses, but it did not convict him of any *necessarily included* offenses. Of these lesser related offenses, the one that was factually closest to the murder charge was gross vehicular manslaughter while intoxicated, but because defendant's gross vehicular manslaughter conviction

6

required proof of elements that did not need to be proved to convict defendant of murder, the retrial of the murder charge did not constitute a second trial of the gross vehicular manslaughter charge, and the conviction on the murder charge did not constitute a second gross vehicular manslaughter conviction." (*Hicks, supra*, 4 Cal.5th at p. 209, fn. omitted.)

Alvarado acknowledges *Hicks* "implicitly comes down against appellant's position." " '[E]ven if properly characterized as dictum, statements of the Supreme Court should be considered persuasive.' [Citation.] '[I]t does not follow that the *dictum* of a court is always and at all times to be discarded. A correct principle of law may be announced in a given case, although it may not be necessary to there apply it . . . .' [Citation.] Such dictum, while not controlling authority, carries persuasive weight and should be followed where it demonstrates a thorough analysis of the issue or reflects compelling logic. [Citations.]" (*Smith v. County of Los Angeles* (1989) 214 Cal.App.3d 266, 297; *Candelore v. Tinder, Inc.* (2018) 19 Cal.App.5th 1138, 1149.)

Whether the above observation from *Hicks* constitutes dictum or something more, it reflects a thorough analysis of the issue and compelling logic. We accordingly rely on *Hicks* to conclude the second trial for murder did not violate double jeopardy principles or Penal Code section 1023. Given *Hicks* was published before Alvarado's first trial, we reject his ineffective assistance of counsel argument. Counsel is not ineffective for failing to make a futile motion. (*People v. Thompson* (2010) 49 Cal.4th 79, 122.)

7

## II. Substantial Evidence Supports A Finding Of Injury As To The Hit And Run Driving Conviction

Alvarado contends insufficient evidence supports the jury's conviction in count 5 for hit and run driving resulting in injury to another person. (Veh. Code, § 20001, subd. (b)(1).) Count 5 was charged in connection with Alvarado's collision with Greenberg. Substantial evidence supports a finding of injury to Greenberg's passenger.

" 'To determine whether sufficient evidence supports a jury verdict, a reviewing court reviews the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable jury could find the defendant guilty beyond a reasonable doubt.' [Citation.]" (*People v. Smith* (2014) 60 Cal.4th 603, 617.) " ' "On appeal, we . . . must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.] Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder. [Citations.]" [Citation.]' [Citation.]" (*People v. White* (2014) 230 Cal.App.4th 305, 315, fn. 13.)

Vehicle Code section 20001, subdivision (b)(1) requires the driver of a vehicle involved in an accident resulting in injury to a person other than himself to immediately stop the vehicle, provide reasonable assistance, and supply identification

information to the other party or to police.  To prove a violation of Vehicle Code section 20001, subdivision (b)(1), the People must prove, in relevant part, the accident caused injury to someone besides the defendant, and the defendant had actual knowledge of the other person's injury or had sufficient facts of the accident to impute constructive knowledge of injury on him.  (*People v. Harbert* (2009) 170 Cal.App.4th 42, 52; *People v. Carter* (1966) 243 Cal.App.2d 239, 241 (*Carter*).)

At trial, Greenberg testified she did not sustain any injuries as a result of the collision.  Her passenger Friedmann testified she "got a little bit hurt" in the back of her neck "but it went away the next day."  Sandra Page did not testify.  Defense counsel moved to dismiss count 5 after the prosecution's case in chief.  The trial court denied the motion.

On appeal, Alvarado contends Friedmann's neck pain does not constitute an injury under Vehicle Code section 20001, subdivision (b)(1) because it was minor and had gone away by the following day.  We find Friedmann's testimony that her neck hurt until the following day to be substantial evidence of an injury under Vehicle Code section 20001, subdivision (b)(1).

In *People v. Thoma* (2007) 150 Cal.App.4th 1096, the court examined the term "bodily injury" in connection with Vehicle Code section 23153, subdivision (a), which prohibits driving under the influence and proximately causing bodily injury.  It reasoned " ' "[b]odily injury means just what it says—harm or hurt to the body.  Common sense requires more for conviction than a 'shaking up' of a person in a car which is in an accident, or fright, or a minor headache; it means very obviously a hurt to the body." '  [Citation.]  'Bodily injury' does not mean substantial or great bodily injury.  [Citation.]" (*Thoma, supra,* at pp. 1099–

9

1100.)  Friedmann's testimony supports a finding she suffered harm or hurt to her body.  The pain in her neck, which lasted until the next day, was more than a mere "shaking up," fright, or minor headache.

We are not persuaded to conclude otherwise by *People v. Abrego* (1993) 21 Cal.App.4th 133, 137–138, which Alvarado cites to argue minor pain does not amount to infliction of injury. *Abrego* addressed whether a slap caused " 'corporal injury resulting in a traumatic condition' " within the meaning of the domestic violence statute in the Penal Code.  (*Id.* at p. 138.)  We need not stray so far from the Vehicle Code to determine whether an injury occurred here.  We thus do not find *Abrego* applicable in this case and instead rely on *Thoma*, as discussed above.

Alvarado further contends there was insufficient evidence he had actual or constructive knowledge that any injury resulted from the collision to trigger his duties under Vehicle Code section 20001.  The circumstances of the collision show constructive knowledge can reasonably be imputed to him because "the seriousness of the collision would lead a reasonable person to assume there must have been resulting injuries."  (*Carter*, *supra*, 243 Cal.App.2d at p. 241.)  Greenberg testified Alvarado "rammed" into her and her car was "totaled."  Indeed, the trunk of the car was pushed into the frame of the rear window.  This is sufficient to impose constructive knowledge of injury on Alvarado, especially when one of the passengers sat in the rear of the car.

We reject Alvarado's contention that he could not have known any injuries resulted from the collision because Greenberg and her passenger appeared unhurt when they spoke briefly before he fled; they only discussed exchanging information and did not discuss whether anyone was injured.  (*People v. Holford*

10

(1965) 63 Cal.2d 74, 80 ["driver who leaves the scene of the accident seldom possesses actual knowledge of injury; by leaving the scene he forecloses any opportunity to acquire such actual knowledge."].)

This case is unlike *Carter*, *supra*, 243 Cal.App.2d 239, upon which Alvarado relies. In *Carter*, the court found no basis to impute constructive knowledge of injury on the defendant because the defendant's car only "slightly damaged" the other car's bumper and the other car's driver advised him no one was hurt. (*Id*. at p. 240.) Here, there was extensive damage to Greenberg's car and neither Greenberg nor her passengers informed Alvarado they were not hurt.

## III. The Trial Court Did Not Abuse Its Discretion To Admit The Body Camera Video

At the second trial, the jury was shown a portion of video taken from the body camera of Officer Taylor McLaws showing the aftermath of Alvarado's collision with Duran. Alvarado contends the trial court abused its discretion to admit the video over his counsel's objections. According to Alvarado, the video was irrelevant and unduly prejudicial. We conclude the trial court did not abuse its discretion to admit the video.

### A. Standard of Review

Under Evidence Code section 351, all relevant evidence is admissible unless prohibited by statute. Relevant evidence is defined in Evidence Code section 210 as evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (*People v. Young* (2019) 7 Cal.5th 905, 930–931.)

However, under Evidence Code section 352, the trial court retains the discretion to exclude relevant evidence if "its

11

probative value is substantially outweighed by the probability that its admission will" either "necessitate undue consumption of time" or "create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352; *People v. Scheid* (1997) 16 Cal.4th 1, 13.) " ' "Undue prejudice" refers not to evidence that proves guilt, but to evidence that prompts an emotional reaction against the defendant and tends to cause the trier of fact to decide the case on an improper basis . . . .' " (*People v. Hollie* (2010) 180 Cal.App.4th 1262, 1276–1277.)

We review for an abuse of discretion the trial court's admission of evidence as relevant and its ruling under Evidence Code section 352. (*People v. Rogers* (2013) 57 Cal.4th 296, 326 (*Rogers*); *People v. Wallace* (2008) 44 Cal.4th 1032, 1057.) Under that standard, the trial court's ruling will not be disturbed unless the court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. (*Rogers, supra,* at p. 326.)

### B. Proceedings Below

At the second trial, the People sought to admit a video taken from the body camera of Officer McLaws. Officer McLaws arrived at the scene within minutes of Alvarado's collision with Duran. The video, which is approximately 20 minutes long, showed the aftermath of the collision, including Duran's damaged car. The segment that was played for the jury was five minutes and 45 seconds long. It showed Officer McLaws briefly interacting with Duran, Alvarado, and other witnesses. It also showed Officer McLaws helping another officer remove Alvarado from his car. The video was not shown to the first jury.

12

Defense counsel argued the video was irrelevant to the sole charge of second degree murder, contained inadmissible hearsay, and was unduly prejudicial under Evidence Code section 352. The trial court overruled the objections. It explained, "I looked at the video, watched it a couple times, and so the relevance of the video is two things I see: to show the defendant after the accident, what he looked like, his state of consciousness, if he said anything; and also for the jury to get a sense of the kind of forces that were involved in this accident . . . a jury could infer what kind of speed the defendant was traveling at the time of the accident, which would help them decide whether the defendant consciously disregarded knowledge of an activity that was dangerous to human life. [¶] It is a little hard to watch, but nothing over the top. It's not too gruesome or gratuitous, so I don't have a problem with the first part of the video being played . . . ." The trial court excluded most of the video because "it's just officers milling around speculating, relating hearsay statements from witnesses off camera, off screen for another 15 minutes, so I don't think that that's appropriate for the jury to listen to the officers' opinions and speculations."

## C.    Analysis

The trial court did not abuse its discretion to admit a portion of the video at the retrial for second degree murder. Second degree murder is the unlawful killing of a human being with express or implied malice but without the additional elements, such as willfulness, premeditation, and deliberation, that would support a conviction of first degree murder. (See Pen. Code, §§ 187, subd. (a), 188, 189.) Malice "is express when there is manifested a deliberate intention to unlawfully take away the life of a fellow creature." (Pen. Code, § 188, subd. (a)(1).) "Malice

13

is implied when the killing is proximately caused by ' "an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life." ' [Citation.] In short, implied malice requires a defendant's awareness of engaging in conduct that endangers the life of another—no more, and no less." (*People v. Knoller* (2007) 41 Cal.4th 139, 143.)

Here, the People proceeded on a theory of implied rather than express malice. The defense theory at trial was that the evidence demonstrated gross negligence and not implied malice. Defense counsel argued at closing that Alvarado's blood-alcohol content demonstrated significant cognitive impairment. Additionally, he was unconscious and unresponsive immediately after the accident. Defense counsel argued these facts showed Alvarado lacked the requisite awareness for second degree murder.

Given the People's burden to prove implied malice and Alvarado's defense, the trial court did not abuse its discretion to admit the video because it was relevant to show Alvarado's mental state. The video was taken almost immediately after the collision and showed Officer McLaws interacting briefly with Alvarado while pulling him from the Durango. This allowed the jury to judge Alvarado's mental state immediately after the collision.

The video also showed the damage to Duran's car and the injuries she suffered. We agree with the trial court that the jury could infer the speed at which Alvarado was travelling at the time of the collision from its view of the damage to the car and Duran's injuries. The jury could reasonably use this information

14

to conclude Alvarado acted with conscious disregard for life when he sped away from one collision and failed to brake or slow down for a red light shortly thereafter, causing another collision.

We reject Alvarado's claim the video was not relevant because there was no dispute about the speed of his car, the cause of Duran's death, or the nature of Duran's injuries. Alvarado contends these issues were shown by live witness testimony and the video was therefore unnecessary to the People's case. While Alvarado did not present any evidence to dispute these issues at trial, he also did not stipulate to them. It remained the People's burden to prove its case beyond a reasonable doubt. (*Estelle v. McGuire* (1991) 502 U.S. 62, 69.) " ' "[P]rosecutors, it must be remembered, are not obliged to prove their case with evidence solely from live witnesses; the jury is entitled to see details of the victims' bodies to determine if the evidence supports the prosecution's theory of the case. [Citations.]" ' " (*People v. Powell* (2018) 6 Cal.5th 136, 164.) The video was relevant as circumstantial evidence of Duran's mental state at the time of the accident.

Additionally, the trial court did not abuse its discretion to admit the video over Alvarado's objection under Evidence Code section 352. The probative value of the video, discussed above, was not substantially outweighed by its prejudicial effect. We are not persuaded by Alvarado's argument that the video likely prompted an emotional reaction from the jury because it showed Duran dying and thus was extremely inflammatory. The trial court found it was "not too gruesome or gratuitous." As our Supreme Court has long noted, " ' " 'murder is seldom pretty, and pictures, testimony and physical evidence in such a case are

15

always unpleasant.' " ' [Citation.]" (*People v. Moon* (2005) 37 Cal.4th 1, 35.)

Here, there is no question the video accurately depicted the scene of the collision and Alvarado's and Duran's condition. Moreover, the trial court limited the 20-minute video to five minutes and 45 seconds, finding the remaining portion to contain irrelevant and improper information for the jury to consider. As the Supreme Court recognized in *People v. Ramirez* (2006) 39 Cal.4th 398, 454, "[t]he jury can, and must, be shielded from depictions that sensationalize an alleged crime, or are unnecessarily gruesome, but the jury cannot be shielded from an accurate depiction of the charged crimes that does not unnecessarily play upon the emotions of the jurors. The record reflects that the experienced trial judge was well aware of his duty to weigh the prejudicial effect of the photographs against their probative value, and carefully did so." Given the guidance provided by *Ramirez,* we conclude the trial court did not abuse its discretion to admit the video.[2]

In any case, the erroneous admission of evidence "does not require reversal except where the error or errors caused a miscarriage of justice." (*People v. Richardson* (2008) 43 Cal.4th 959, 1001.) Here, we conclude that even if it was error to admit the video into evidence, any error was harmless under both the

---

[2]     Alvarado also claims the admission of the video violated his rights under the Fifth, Fourteenth, and Sixth Amendments. Because we conclude the trial court did not abuse its discretion, "there is thus no predicate error on which to base the constitutional claims." (*People v. Roybal* (1998) 19 Cal.4th 481, 506, fn. 2.)

16

federal and state standards. (See *Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Watson* (1956) 46 Cal.2d 818, 836; *People v. Page* (2008) 44 Cal.4th 1, 41–42 [absent violation of federal constitutional rights, evidentiary error is measured under *Watson* standard of prejudicial error].)

In *Hicks, supra,* 4 Cal.5th at page 216, the court applied *People v. Watson* to find harmless the trial court's instructional error. The *Hicks* court determined the evidence was overwhelming both as to the objective dangerousness of the defendant's behavior and as to a finding of implied malice. It found "particularly significant that during the chase preceding the fatal collision, defendant ignored both red lights and the sirens of pursuing law enforcement officers, and he also nearly hit several vehicles. Those are events that would tend to put a person on notice that he or she is driving in a dangerous manner, and there is no reason to conclude that they did not put defendant on such notice." (*Id.* at pp. 215–216.)

As in *Hicks,* the evidence was overwhelming as to the objective dangerousness of Alvarado's behavior and to prove his implied malice. It is undisputed Alvarado was highly intoxicated at the time he hit Greenberg's car. Although he was aware he was driving dangerously after the collision with Greenberg, he chose to get back in his car to flee the scene. He drove over 60 miles per hour in a 40-mile-per-hour zone, ran a red light, and rammed into Duran's car. He continued on until he ran over the median divider and hit a parked car.

The record also demonstrates Alvarado was aware of the dangers of driving while intoxicated. The parties stipulated Alvarado had three DUIs in 1997, 2001, and 2006 and had been ordered to attend DUI classes as part of his sentence. He

17

admitted in jailhouse calls that he was intoxicated and his girlfriend had warned him repeatedly about the consequences of driving drunk.  These facts clearly establish implied malice.

Thus, any error resulting from the admission of the video into evidence was harmless.  *Hicks* applied the standard under *People v. Watson, supra,* 46 Cal.2d at page 836 to find harmless error.  Given these facts, though, we also find it is clear beyond a reasonable doubt that any error in admitting the video into evidence was harmless under *Chapman v. California, supra,* 386 U.S. at page 24.

## DISPOSITION

The judgment is affirmed.

BIGELOW, P. J.

WE CONCUR:

STRATTON, J.

WILEY, J.

18